[Cite as *State v. Taylor*, 2014-Ohio-2550.]

## IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY   COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 25764 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 2011-CR-4317/1 |
| v. | : | |
| | : | |
| DARREN D. TAYLOR | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

## O P I N I O N

Rendered on the 13th day of June, 2014.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by KIRSTEN A. BRANDT, Atty. Reg. #0070162, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45402
      Attorney for Plaintiff-Appellee

RICHARD A. NYSTROM, Atty. Reg. #0040615, 1502 Liberty Tower, 120 West Second Street, Dayton, Ohio 45402
      Attorney for Defendant-Appellant

. . . . . . . . . . . .

HALL, J.,

    **{¶ 1}**    Darren D. Taylor appeals from his conviction and sentence on two counts of murder

and accompanying firearm specifications.[1]

{¶ 2}     In his sole assignment of error, Taylor contends "the trial court erred by failing to suppress the evidence obtained from the warrantless searches of his cell phones including the GPS data obtained thereby[.]"

{¶ 3}     Taylor's convictions stem from his participation with two other people in an attempted robbery of a pawn shop. During the incident, Taylor shot and killed a store clerk. Before dying, however, the clerk returned fire and injured one of Taylor's accomplices, who also later died. A customer next door followed Taylor and his accomplices as they fled in a van. The customer contacted police and provided the Michigan license plate number of the van. Using that information, police quickly discovered that Taylor was the van's registered owner. They also discovered his address in the Detroit area. (Suppression Tr. at 101). Police then searched databases and were able to locate cell phone numbers for Taylor and his brother, who also resided in the Detroit area. (*Id*. at 102-103). Sprint was the cell phone carrier for both phones. (*Id*. at 103).

{¶ 4}     Police contacted Sprint and completed an "exigent circumstances form," which the company required in order to divulge phone data. (*Id*. at 103-104). In this case, police wanted to track the "ping" history of the two phone numbers.[2] Sprint granted the request. Police then discovered that the phone in Taylor's name had been turned off. The phone linked to his brother, however, "was active and it was pinging." (*Id*. at 108). Sprint provided ping information for that

---

[1] Although a jury found Taylor guilty of other charges, the trial court merged them into the two murder counts on which it imposed sentence.

[2] "Pings are GPS locations that are omitted [sic] from phones that will give a geographic location of the phone, and it will range usually in meters. It will give you a meter range so they can give you an idea where a phone is located through its travel[.]" (Suppression Tr. at 104).

phone, and police were able to trace its path from Detroit to the pawn shop at the time of the shooting and then back to Detroit. The pings in Detroit corresponded to locations where Taylor's accomplices lived and where the injured accomplice's dead body was found. The last ping occurred at a Michigan parole office where Taylor was found and detained. (*Id.* at 71, 83, 109). While being held there, he allowed a Michigan police officer to search two cell phones in his possession. (*Id.* at 78). Nothing was recovered in that search. (*Id.* at 93). Police subsequently obtained an "administrative subpoena for phone records" and gathered additional information from Sprint. (*Id.* at 111-114).

{¶ 5}     After his arrest, Taylor filed a suppression motion. He argued in part that tracking the cell phone pings constituted a search under the Fourth Amendment and required a warrant. After a hearing, the trial court overruled Taylor's motion. Relying primarily on *United States v. Skinner*, 690 F.3d 772 (6th Cir.2012), the trial court held that he had no legitimate expectation of privacy in the pings emitted from the cell phone. (Doc. #60). The case proceeded to trial. Taylor was found guilty of numerous charges. The trial court merged allied offenses and imposed an aggregate prison term of thirty-six years to life for two counts of murder and accompanying firearm specifications. (Doc. #203).

{¶ 6}     On appeal, Taylor cites *United States v. Jones*, __ U.S. __, 132 S.Ct. 945, 181 L.Ed.2d 911 (2012), for the proposition that using cell-phone tracking data constitutes a search under the Fourth Amendment. He insists that he had a legitimate expectation of privacy in the cell phone at issue because his brother had given it to him for personal use.[3] He contends *Skinner*

---

[3]The trial court determined that defendant Darren Taylor did not have standing to complain about data received from the phone registered in the name of his brother, Marlon Taylor. Standing did not result, the court determined, just because Darren Taylor may have been using his brother's phone or because the phone was located on Darren Taylor's person. We do not necessarily disagree. However we

is distinguishable. He also argues that no exigent circumstances existed in the present case and that police should have obtained a warrant. Therefore, he asserts that all evidence dependent on the cell phone pings should have been suppressed.

{¶ 7} Upon review, we see no error in the trial court's ruling. We agree with the trial court that Taylor had no reasonable expectation of privacy in the pings emitted by the cell phone in his possession. Therefore, no search warrant was required regardless of whether exigent circumstances existed.[4] "'The touchstone of Fourth Amendment analysis is whether a person has a constitutionally protected reasonable expectation of privacy.'" *State v. Coleman*, 2d Dist. Montgomery No. 25248, 2012-Ohio-6042, ¶ 23, quoting *California v. Ciraolo*, 476 U.S. 207, 211, 106 S.Ct. 1809, 90 L.Ed.2d 210 (1986). "The Supreme Court 'has held repeatedly that the Fourth Amendment does not prohibit the obtaining of information revealed to a third party and conveyed by him to Government authorities, even if the information is revealed on the assumption that it will be used only for a limited purpose and the confidence placed in the third party will not be betrayed.'" *Id.*, quoting *United States v. Miller*, 425 U.S. 435, 443, 96 S.Ct. 1619, 48 L .Ed.2d 71 (1976); *see also Smith v. Maryland*, 442 U.S. 735, 744, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979) (holding that "[w]hen [defendant] used his phone, [he] voluntarily conveyed numerical information to the telephone company and 'exposed' that information to its equipment in the ordinary course of business"); *Coleman* at ¶ 25 (finding that a defendant had no reasonable expectation of privacy in records of his electricity usage because he voluntarily conveyed that

---

analyze the issue from the perspective of whether a warrant was required.

[4]Although Sprint itself required an "exigent circumstances form" to be completed, that requirement has no impact on our Fourth Amendment analysis.

information to the utility company when using electricity).

**{¶ 8}** In *State v. Neely*, 2d Dist. Montgomery No. 24317, 2012-Ohio-212, this court held that a defendant had no reasonable expectation of privacy in cell phone records maintained by Cincinnati Bell. The records at issue involved "(1) the name and address of the subscriber (Neely) assigned to the particular cell phone number; (2) the numbers of telephones placing calls to, or receiving calls from, that cell phone number; and (3) the duration of those calls." *Id.* at ¶ 2. In *State v. Gipson*, 6th Dist. Erie No. E-10-038, 2012-Ohio-515, the Sixth District Court of Appeals held that a defendant had no expectation of privacy in cell phone records that revealed his location but did not reveal the contents of any conversations. *Id.* at ¶ 28, 31. Likewise, in *State v. Griffin*, 9th Dist. Lorain No. 11CA010128, 2013-Ohio-416, the Ninth District found no need for a warrant to obtain cell phone records that "contained information about the location of [a defendant's] cell phone[.]" *Id.* at ¶ 7-10.

**{¶ 9}** In *Skinner*, upon which the trial court relied, the federal Sixth Circuit Court of Appeals addressed the tracking of cell phone pings to determine a defendant's location. In *Skinner*, federal agents traced the path of a cell phone across Texas to a truck stop where the defendant was arrested in possession of drugs. The defendant argued that using tracking information emitted from the cell phone constituted an unlawful warrantless search. The Sixth Circuit disagreed, finding "no Fourth Amendment violation because Skinner did not have a reasonable expectation of privacy in the data given off by his voluntarily procured pay-as-you-go cell phone." *Id.* at 777. The Sixth Circuit found this conclusion supported by *United States v. Knotts*, 460 U.S. 276, 103 S.Ct. 1081, 75 L.Ed.2d 55 (1983), in which the U.S. Supreme Court saw no Fourth Amendment violation where a co-defendant voluntarily took possession of a drum

containing a beeper that police used to track his movements. The Sixth Circuit reasoned: "Similar to the circumstances in *Knotts*, Skinner was traveling on a public road before he stopped at a public rest stop. While the cell site information aided the police in determining Skinner's location, that same information could have been obtained through visual surveillance. There is no inherent constitutional difference between trailing a defendant and tracking him via such technology." *Skinner* at 778. Ultimately, the Sixth Circuit concluded that "[b]ecause authorities tracked a known number that was voluntarily used while traveling on public thoroughfares, Skinner did not have a reasonable expectation of privacy in the GPS data and location of his cell phone." *Id.* at 781.

{¶ 10} Despite Taylor's effort to distinguish *Skinner*, we reach the same conclusion here. He traveled from the Detroit area to the pawn shop and back while voluntarily carrying a cell phone that emitted pings. He had no reasonable expectation of privacy in these pings, which were detected and recorded by Sprint. Therefore, the Fourth Amendment did not prohibit police from tracking the pings without a warrant. Taylor's citation to *Jones*, supra, fails to persuade us otherwise. In *Jones*, the U.S. Supreme Court held that attaching a GPS tracking device to a defendant's car and using the device to monitor his movements constituted a search under the Fourth Amendment. As the Sixth Circuit noted in *Skinner*, however, *Jones* is distinguishable because it turned on the trespassory nature of placing the tracking device. *Skinner* at 779. No such physical intrusion occurred in *Skinner* or in Taylor's case. Like the defendant in *Skinner*, Taylor himself voluntarily obtained a cell phone that included GPS tracking technology. Police were free to take advantage of that technology without obtaining a warrant.

{¶ 11} Taylor's assignment of error is overruled, and the judgment of the Montgomery

County Common Pleas Court is affirmed.

. . . . . . . . . . . . .

FROELICH, P.J., and DONOVAN, J., concur.

Copies mailed to:

Mathias H. Heck
Kirsten A. Brandt
Richard A. Nystrom
Hon. Dennis J. Adkins