[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Taylor*, Slip Opinion No. 2020-Ohio-3514.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-3514

THE STATE OF OHIO, APPELLANT, *v*. TAYLOR, APPELLEE.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Taylor*, Slip Opinion No. 2020-Ohio-3514.]

*Criminal law—Court costs—R.C. 2947.23(C)—Ohio's statutory scheme does not require a trial court to consider the defendant's present or future ability to pay court costs when ruling on the defendant's motion to waive, suspend, or modify court costs under R.C. 2947.23(C)—Court of appeals' judgment reversed and cause remanded.*

(No. 2018-0797—Submitted January 7, 2020—Decided July 2, 2020.)

APPEAL from the Court of Appeals for Montgomery County,

No. 27539, 2018-Ohio-1649.

_____

DEWINE, J.

{¶ 1} Ohio's statutory scheme makes a trial court's imposition of court costs on a convicted defendant mandatory but grants the court discretion to waive, suspend, or modify the costs.  In making this discretionary determination, must the

court consider the defendant's present or future ability to pay the costs? Because the statutory scheme imposes no such obligation, we say no. The Second District Court of Appeals saw things differently, so we reverse.

**Taylor is convicted of murder and ordered to pay court costs**

{¶ 2} Darren Taylor was convicted of two counts of murder for his involvement in an attempted pawn-shop robbery that resulted in the deaths of a store clerk and one of Taylor's accomplices. For his crimes the trial court sentenced him to 36 years to life in prison. The court also ordered him to pay restitution and court costs. His convictions were affirmed on direct appeal. *State v. Taylor*, 2d Dist. Montgomery No. 25764, 2014-Ohio-2550, ¶ 11.

{¶ 3} Later, Taylor moved to vacate or suspend the restitution order and court costs on the grounds that he was indigent and received only $19 dollars per month in prison wages. The trial court denied the motion and Taylor's subsequent request for the court to reconsider its judgment.

{¶ 4} Taylor then appealed to the Second District. The court of appeals affirmed the trial court's judgment regarding restitution. But, relying on its precedent in *State v. Copeland*, 2d Dist. Montgomery No. 26842, 2016-Ohio-7797, ¶ 11, the court in a two-to-one decision reversed as to court costs. "The trial court abused its discretion," it held, "by overruling Taylor's motion to vacate and/or suspend court costs without considering his indigency and ability to pay." 2018-Ohio-1649, ¶ 19. It remanded the case to the trial court for the appropriate consideration.

{¶ 5} We accepted the state's appeal to address whether a trial court must consider a defendant's present or future ability to pay when ruling on a motion to vacate, suspend, or modify court costs under R.C. 2947.23(C).

**Ohio's statutory scheme does not require a trial court to consider a defendant's ability to pay when ruling on a motion to waive, suspend, or modify costs**

{¶ 6} By statute, the imposition of court costs on all convicted defendants is mandatory. R.C. 2947.23(A)(1)(a) reads: "In all criminal cases, including violations of ordinances, the judge or magistrate *shall* include in the sentence the costs of prosecution, including any costs under section 2947.231 of the Revised Code, and render a judgment against the defendant for such costs." (Emphasis added.) As we have explained, this strict statutory language "*requires* a court to impose costs against all convicted defendants," indigent or not. (Emphasis sic.) *State v. White*, 103 Ohio St.3d 580, 2004-Ohio-5989, 817 N.E.2d 393, ¶ 8.

{¶ 7} But R.C. 2947.23(C) gives a trial court continuing jurisdiction to "waive, suspend, or modify the payment of the costs of prosecution * * * at the time of sentencing or at any time thereafter." So, while the court must impose costs, it may also waive, suspend, or modify them. "[W]aiver of costs is permitted–but not required—if the defendant is indigent." *White* at ¶ 14.

{¶ 8} The statutory language provides no explicit criteria that a court should use in deciding whether to waive, suspend, or modify costs. And that provides the occasion for this appeal—what criteria, if any, must a court use in making that decision?

{¶ 9} Taylor doesn't deny that the imposition of court costs is mandatory, regardless of a defendant's ability to pay. Nor does he deny that the statute imposes no explicit criteria in assessing a motion to waive, suspend, or modify court costs. Nevertheless, he argues that an implicit requirement to consider ability to pay can be found in the broader statutory structure. In deciding whether this is so, we are mindful that the proper role of a court is to construe a statute as written without adding criteria not supported by the text. *State ex rel. Russo v. McDonnell*, 110 Ohio St.3d 144, 2006-Ohio-3459, 852 N.E.2d 145, ¶ 50. Thus, barring some textual

basis, we will not read into the statute a requirement that courts consider a defendant's ability to pay. As we explain below, Taylor fails to show that the statutory language imposes any such obligation.

{¶ 10} Taylor first argues that R.C. 2947.23(C) implies some kind of ability-to-pay determination. He notes that the statute gives a court granting a motion three options—waive, suspend, or modify. And he urges that we find an implicit requirement that the court's decision be tied to a defendant's ability to pay because that consideration makes sense of those three options. Thus, he posits, if a defendant can't pay costs in the present or the future, then waiver is appropriate. If he can't pay in the present but may be able to pay in the future, then suspension is appropriate. And if he can pay in the present, but only a limited amount, then modification would fit.

{¶ 11} On first pass, we are skeptical of this conclusion because it is in tension with a statutory scheme that requires court costs to be imposed on all convicted defendants regardless of their ability to pay or indigency status. If present or future ability to pay is a condition for retaining costs, it doesn't make much sense for it not to be a condition for imposing costs in the first place. But it plainly is not. *See White*, 103 Ohio St.3d 580, 2004-Ohio-5989, 817 N.E.2d 39, at ¶ 8; R.C. 2947.23(A)(1)(a).

{¶ 12} Moreover, Taylor's argument only works if consideration of ability to pay is the *only* thing that could make rational sense of the statutory language. But it's not. Indeed, in the abstract, there are many other criteria that can equally justify a decision to waive, suspend, or modify the imposition of costs in a particular case. A court might, for instance, look to whether the costs are unfairly excessive given the degree of wrongdoing. Or a court might look to whether the costs impose a hardship on third parties. Or maybe a court would conclude that R.C. 5120.133, which prevents a prison from disbursing an inmate's funds that, by statute, are "exempt from execution, garnishment, attachment, or sale," adequately addresses a

defendant's present inability to pay. In such a case, a court might choose to keep the costs order in place in the event the defendant can pay later.

{¶ 13} The point is that an ability-to-pay requirement is no more implied by the statute than any other of a range of plausible candidates that could make sense of a court's decision to waive, suspend, or modify costs. Indeed, this case illustrates a basic point about statutory interpretation—courts should tread carefully in finding implied conditions in statutes, because in doing so they run the risk of not just construing a statute but enlarging it. *See Lamie v. United States Trustee*, 540 U.S. 526, 538, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004). The danger in finding implied criteria in a statute is that there can be a tendency to find what one wants to find rather than what is actually there.

{¶ 14} The dissent falls into that trap and concludes that the purpose of R.C. 2947.23 is to lighten the burden on taxpayers and therefore insists that we graft an ability-to-pay requirement onto the statutory language. But the dissent offers no textual support for this divination of legislative purpose. Indeed, one can imagine any number of reasons that might have motivated individual legislators to vote for the requirement—for example, to make a convicted defendant pay his fair share of the costs of his proceedings. But it is not our role to speculate about legislative purposes and then rewrite statutory criteria to better achieve our imagined purpose. Rather, we must base our decision on the statute that the General Assembly actually passed.

{¶ 15} Taylor also points to statutory provisions concerning the collection of court costs. For instance, R.C. 2303.23 states that a court may direct the clerk of courts to cancel all or part of an amount owed to the court if it is "due and uncollectable." And R.C. 2949.14 provides that "[u]pon conviction of a nonindigent person for a felony," the clerk of the common pleas court shall create an itemized bill of certain costs and that "[t]he clerk shall attempt to collect the costs from the person convicted." From these statutes, Taylor would have us infer

that ability to pay is a necessary criterion for a trial court's determination of a motion to waive, suspend, or modify court costs. But that doesn't follow. Indeed, both R.C. 2303.23 and 2949.14 are merely permissive—they do not require consideration of ability to pay. *See White*, 103 Ohio St.3d 580, 2004-Ohio-5989, 817 N.E.2d 393, at ¶ 14 ("we are * * * left to infer from this silence [about indigent defendants in R.C. 2949.14] that collection from indigent defendants is merely permissive"). And it is worth noting that when the General Assembly has wanted to make present and future ability to pay a required criterion, it has done so explicitly. *See* R.C. 2929.19(B)(5) ("Before imposing a financial sanction under section 2929.18 of the Revised Code or a fine under section 2929.32 of the Revised Code, the court shall consider the offender's present and future ability to pay the amount of the sanction or fine").

{¶ 16} Finally, Taylor argues that if there are no criteria in the statute, then the decision to waive, suspend, or modify costs becomes just a matter of trial-court whim—anything goes. We disagree. It is a basic principle of our legal system that a trial court's decision must not be arbitrary and cannot be based on considerations wholly unrelated to the decision it is tasked with making. A trial court could not, for instance, deny a motion to waive costs based on the flip of a coin or the color of a defendant's hair or because it is Tuesday. Neither could a court adopt a standing order to reject all such motions, as that would be opting out of any sort of rational assessment altogether. Statutes often give broad discretion to courts to make decisions that are reasonable under the circumstances. But to require that a specific criterion be applied in every case, there must be statutory support. And there just isn't any here. Thus, we hold that a trial court is not required to consider the defendant's ability to pay in assessing a motion to waive, suspend, or modify court costs under R.C. 2947.23(C), though it is permitted to do so.

**Constitutional limits do not make a defendant's ability to pay a required criterion when a court rules on a defendant's motion to waive, suspend, or modify costs**

{¶ 17} Taylor maintains that unless we mandate that trial courts consider a defendant's ability to pay, the statutory scheme is constitutionally infirm. Under his theory, an indigent defendant may feel compelled to forego his right to a jury trial or to certain process rights, such as the right to subpoena witnesses, in order to reduce the costs of prosecution that might later be imposed. To avoid this constitutional problem, he argues, we should import consideration of ability to pay into the statutory scheme.

{¶ 18} For support, Taylor looks to the United States Supreme Court's decision in *Fuller v. Oregon*, 417 U.S. 40, 94 S.Ct. 2116, 40 L.Ed.2d 642 (1974). *Fuller* dealt with an Oregon statute that allowed the state to recoup the costs of appointed counsel as a condition of probation when a defendant, indigent at the time of trial, was later able to make payments towards those costs. *Id.* at 41. The Supreme Court upheld the statute. But in doing so, the court noted that any doubts about the constitutionality of the statutory scheme were minimized because defendants for whom repayment would work a "manifest hardship" were exempt from having to make payments as a condition of probation. *Id.* at 53. From the Supreme Court's comments in *Fuller*, Taylor argues that a defendant's ability to pay must figure into a trial court's decision to waive, modify, or suspend court costs.

{¶ 19} We note that this court previously rejected a similar argument, although framed in terms of equal protection. *See White*, 103 Ohio St.3d 580, 2004-Ohio-5989, 817 N.E.2d 393, at ¶ 11-13. There, we noted that because criminal defendants are afforded the same rights as other debtors to exempt assets from collection, there was no constitutional infirmity in the statutes we considered. *Id.* at ¶ 13; *see* R.C. 5120.133; R.C. 2329.66.

**{¶ 20}** The *Fuller* decision on which Taylor relies also voiced skepticism about the sort of argument that Taylor presents here. Indeed, the court explicitly criticized the California Supreme Court's decision in *In re Allen*, 71 Cal.2d 388, 391, 78 Cal.Rptr. 207, 455 P.2d 143 (1969), which held that a California statute allowing the recovery of appointed-counsel fees as a condition of probation was unconstitutional because it might chill the defendant's exercise of his Sixth Amendment rights. *Fuller* at 51-52. As the *Fuller* court put it, "[t]he fact that an indigent who accepts state-appointed legal representation knows that he might someday be required to repay the costs of these services in no way affects his eligibility to obtain counsel." *Id.* at 53. Similarly, here, the fact that a defendant may later be required to pay the costs of prosecution in no way denies him his right to a jury trial or other process rights. So, *Fuller* offers little support for Taylor's arguments.

**{¶ 21}** If anything, Taylor's constitutional argument is far weaker than the one the United States Supreme Court rejected in *Fuller*. To start, we have held that the imposition of court costs is civil in nature, and under Article 1, Section 15 of the Ohio Constitution, a person cannot be imprisoned for his failure to pay a civil debt. *Strattman v. Studt*, 20 Ohio St.2d 95, 102, 253 N.E.2d 749 (1969). This is in contrast to *Fuller*, in which repayment was a condition of probation. *Fuller*, 417 U.S. at 41-42, 94 S.Ct. 2116, 40 L.Ed.2d 642. That distinction is crucial. Taylor faces no additional punishment if he is unable to pay his debts for the costs of prosecution, whereas the defendant in *Fuller* faced an additional period of incarceration. In fact, it was that part of the Oregon law that animated the dissenting justices in *Fuller* who would have found the statute unconstitutional. *Fuller* at 60 (Marshall, J., dissenting). Without that feature, there is little reason to think that a statutory scheme imposing costs on a defendant raises a serious constitutional issue.

**{¶ 22}** It's true that a court may require a defendant to perform community service in lieu of monetary payments toward the debt. R.C. 2947.23(B). But a

court can do that only if, after a hearing, it determines that community service would be "appropriate." *Id.* That additional safeguard prevents a court from imposing community service on those who plausibly cannot pay off the debt through that sort of work, e.g., because they are very elderly, as Taylor will likely be when he finishes his mandatory term of incarceration.

{¶ 23} Further, as this court explained in *White*, other safeguards protect criminal defendants who owe civil debts on the same terms as other civil debtors. *White*, 103 Ohio St.3d 580, 2004-Ohio-5989, 817 N.E.2d 393, at ¶ 13. R.C. 5120.133, for example, allows collection of debts from prisoners only if those funds would not otherwise be exempt from execution, garnishment, attachment, or sale under R.C. 2329.66—a statute that insulates a basic minimum set of assets from collection.

{¶ 24} In short, Taylor is on similar footing with other civil debtors insofar as he doesn't stand to lose his freedom for failure to pay his court costs and because he can take advantage of the same protections afforded to other civil debtors by exempting certain assets from collection. There is no reason that Taylor should be constitutionally entitled to receive *more* protections than other civil debtors just because his debt came about through criminal-court proceedings rather than through some other mechanism. We reject Taylor's claim that Ohio's statutory scheme is constitutionally infirm because it does not require a court to consider a defendant's present or future ability to pay when ruling on a motion to waive, suspend, or modify court costs.

### Conclusion

{¶ 25} For these reasons, we reverse the judgment of the Second District Court of Appeals and remand the matter to the court of appeals for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

KENNEDY and FRENCH, JJ., concur.

O'CONNOR, C.J., concurs, with an opinion.

FISCHER, J., concurs in judgment only.

STEWART, J., dissents, with an opinion joined by DONNELLY, J.

_____

**O'CONNOR, C.J., concurring.**

{¶ 26} I agree with the majority that the plain language of R.C. 2947.23(C) does not require a trial court ruling on a defendant's motion to waive, suspend, or modify court costs to consider the defendant's present or future ability to pay the court costs in every case. That said, when a defendant's motion to waive, suspend, or modify the defendant's court costs is focused on the defendant's ability to pay, the normal standard of review still applies: the trial court must not abuse its discretion in ruling on the motion. The record in a particular case might present such strong evidence regarding the defendant's inability to pay court costs that the trial court's failure to address that issue might be an abuse of discretion. And even when a trial court does address a defendant's ability to pay, its decision should still be reviewed for abuse of discretion. On remand, the court of appeals here should carefully review the trial court's decision and determine whether the trial court abused its discretion.

{¶ 27} Putting aside the details of appellee Darren Taylor's case, I also write to note that there are many good reasons why a trial court *should* consider a defendant's ability to pay and why the General Assembly should amend R.C. 2947.23(C) to make that a requirement in every case. Indeed, of all the things a court should consider in ruling on such a motion, the defendant's ability to pay is the most obvious and relevant.

{¶ 28} After a criminal trial, the court costs imposed on a defendant under R.C. 2947.23(A) can easily be thousands of dollars. And although a court's order

for a defendant to pay those costs might seem like a simple way for the state to recoup some of the costs it incurred conducting the defendant's trial, when the defendant lacks the ability to pay those costs, the order will, in many cases, create more problems than it attempts to solve.

{¶ 29} First, requiring a defendant to pay court costs when the defendant lacks the ability to do so creates other costs for the state in the form of the state's time and resources spent pursuing various methods of collecting the costs from the defendant. Those methods can include a court's conducting hearings to determine whether the court should order the defendant to perform community service in lieu of payment, R.C. 2947.23(A)(1)(a)(i) and (B), the pursuance of the clerk of courts to collect the costs, *State v. White*, 103 Ohio St.3d 580, 2004-Ohio-5989, 817 N.E.2d 393, paragraph two of the syllabus, and a block on the registration of the defendant's motor vehicle, R.C. 1901.44(B) (motor-vehicle-registration block for nonpayment of courts costs in municipal court); R.C. 1907.25(B) (same for county court); R.C. 2947.09(A) (same for common pleas court). All these methods of collecting court costs require the state to expend its time and resources, which it could better spend tending to more important responsibilities. *See, e.g.*, Supreme Court of Ohio, *Report and Recommendations of the Joint Committee to Study Court Costs and Filing Fees* at 5 (July 2008), http://www.supremecourt.ohio.gov/publications/jtcommcourtcostsreport.pdf (accessed June 24, 2020) [https://perma.cc/G6MA-7KPJ] ("an increase in court costs [required to be paid by the defendant at the conclusion of a case] results in more time spent by the court or clerk of court collecting, tracking and disbursing the funds, resulting in increased personnel costs"). Furthermore, although R.C. 2303.23 permits a court to cancel all or part of a debt owed by a defendant when the amount owed is uncollectable, such an order will, as a practical matter, be entered only after the state has already attempted to collect the debt. A court's consideration of a defendant's ability to

pay court costs under R.C. 2947.23(C) is therefore an easy and effective way to avoid the state's spending its time and resources recouping a defendant's court costs. Trial courts should consider a defendant's ability to pay court costs to avoid wasting the public's resources.[1]

{¶ 30} Requiring a defendant to pay court costs when the defendant lacks the ability to do so also imposes significant unintended consequences on the defendant personally. The brief submitted in this case by amicus curiae NAACP Legal Defense & Educational Fund, Inc., explains many of these unintended consequences. For example, the payment of court costs is often required as a condition of the defendant's community-control sentence. *See, e.g., State v. Williams*, 5th Dist. Stark No. 2015CA00045, 2015-Ohio-2868, ¶ 2; *State v. Stevens*, 2d Dist. Greene No. 2014-CA-10, 2015-Ohio-1051, ¶ 5; *State v. Estep*, 4th Dist. Gallia No. 03CA22, 2004-Ohio-1747, ¶ 2. Although a defendant's failure to pay court costs may not lead to the defendant's punishment by jail time, Ohio's courts of appeals have determined that a defendant's failure to pay court costs "may * * * be considered as a factor in determining whether to modify or revoke community control for other violations," *Stevens* at ¶ 5, fn.2; *see also Estep* at ¶ 11 (same). A defendant's failure to pay may also expose the defendant to a longer or more restrictive community-control sentence. *See* R.C. 2929.15(B)(1)(a) and (b); R.C. 2929.25(D)(2)(a) and (b).

---

1. In a recent study, the Brennan Center for Justice analyzed the efficiency of collecting court fees and fines in ten counties throughout three states outside Ohio. It found that court orders to pay fees and fines are "an inefficient source of government revenue." Brennan Center for Justice, *The Steep Costs of Criminal Justice Fees and Fines* at 5 (Nov. 21, 2019), https://www.brennancenter.org/ sites/default/files/2019-11/2019_10_Fees%26Fines_Final5.pdf (accessed June 24, 2020) [https://perma.cc/M6HY-RTQU]. It found that regarding the counties in two of the states the study involved, for every dollar of revenue raised from court fees and fines, the counties spent 41 cents on in-court hearings and jail costs relating to defendants who did not pay. *Id.* Although the case before us involves only court costs, for which jail may not be imposed on the defendant for failure to pay, this report highlights the ways in which court-ordered financial sanctions upon people lacking the ability to pay can result in significant costs for the state.

{¶ 31} Making matters worse, a defendant's violation of community-control conditions due to the defendant's inability to pay court costs might make the defendant ineligible for many important federal benefits and programs specifically designed to help the poor, including the following:

- the Temporary Assistance for Needy Families program, *see* 42 U.S.C. 608(a)(9)(A)(ii);

- supplemental-security-income benefits for people who are over the age of 65, blind, or disabled, *see* 42 U.S.C. 1382(e)(4)(A)(ii);

- public housing, *see* 42 U.S.C. 1437d(l)(9)(A)(2);

- low-income housing assistance, *see* 42 U.S.C. 1437f(d)(1)(B)(v); and

- the Old-Age, Survivors, and Disability Insurance program, *see* 42 U.S.C. 402(x)(1)(A)(v).[2]

Sadly, a defendant's loss of eligibility to participate in these programs will not hurt just the defendant. Because some of these programs are designed to help families, the loss of eligibility will also hurt the defendant's family.

{¶ 32} Finally, Ohio law permits its clerks of courts to charge a defendant interest on the amount of the defendant's unpaid court costs. R.C. 2335.19(B). The result is that a defendant who lacks the ability to pay court costs will necessarily end up paying *more* than a defendant who has the resources to pay court costs immediately, and the interest charged will, for many defendants, prolong the time it takes for the defendant to pay off that debt (and will also prolong the time during

---

2. Each of these federal statutes bars participation based on the defendant's violation of the terms of the defendant's probation under federal or state law. In Ohio, however, the term "probation" was replaced with the term "community control" in 1996. *See Cleveland Bar Assn. v. Cleary*, 93 Ohio St.3d 191, 192, 754 N.E.2d 235 (2001), fn.1. " 'Community control is the functional equivalent of probation' " for the purposes of federal law. *United States v. DeJournett*, 817 F.3d 479, 484 (6th Cir.2016), quoting *State v. Talty*, 103 Ohio St.3d 177, 2004-Ohio-4888, 814 N.E.2d 1201, ¶ 16; *see also State v. Clevenger*, 114 Ohio St.3d 258, 2007-Ohio-4006, 871 N.E.2d 589, ¶ 2 (defendant submitted to the trial court documentation establishing that he had been barred from receiving Social Security disability benefits for a mental disability due to the fact that he had not paid his court costs).

which the defendant is ineligible for the federal benefits and programs noted above). During that time, the outstanding debt can also negatively impact a defendant's credit rating, making it harder for the defendant to obtain loans. *See* Alexes Harris, Heather Evans & Katherine Beckett, *Drawing Blood from Stones: Legal Debt and Social Inequality in the Contemporary United States*, 115 Am.J.Soc. 1753, 1780-1781 (2010).

{¶ 33} The majority opinion suggests that denying a defendant's motion to waive court costs is unlikely to actually place any burden on the defendant because the defendant has the same legal protections provided to any other civil debtor. But that assertion fails to account for the problems noted above. The burden is real. Each of these harsh realities impedes a defendant's ability to reintegrate into society, and together, those impediments can make the challenge of reintegration insurmountable. The General Assembly should, with the support of Ohio's courts, address this economic black hole and provide what common sense calls for: statutory criteria should be established requiring a trial court ruling on a defendant's motion to waive, suspend, or modify court costs to take the defendant's ability to pay into consideration.

{¶ 34} For these reasons, I respectfully concur.

————————————

**STEWART, J., dissenting.**

{¶ 35} Appellant, the state of Ohio, contends that a trial court is not required to consider a convicted defendant's present or future ability to pay court costs when ruling on the defendant's motion to waive, suspend, or modify the payment of court costs. The state argues that a defendant's ability to pay is not a necessary consideration because neither the language of R.C. 2947.23(C) nor any other statute or regulation or caselaw obligates a court to consider a defendant's ability to pay. The majority agrees with the state that there is no basis in the law for us to decide

that ability to pay is a necessary consideration for a court ruling on a motion under R.C. 2947.23(C). But neither the state nor the majority has adequately considered how R.C. 2947.23's *purpose*—which is to recoup court costs from convicted defendants in order to lighten the burden of paying for criminal proceedings that falls on Ohio taxpayers—affects our analysis. *See State v. Black*, 142 Ohio St.3d 332, 2015-Ohio-513, 30 N.E.3d 918, ¶ 37 ("Our role in cases of statutory construction is to determine legislative intent by looking to the language of the statute *and the purpose* to be accomplished by the statute" [Emphasis added]). Nor has the majority adequately addressed appellee Darren Taylor's textual and constitutional arguments. Because I agree with Taylor that the purpose of R.C. 2947.23 cannot be realized without requiring trial courts to consider a defendant's ability to pay court costs, I dissent.

**A defendant's ability to pay court costs is a vital, if not determinative, consideration when ruling on a motion to waive, suspend, or modify the payment of court costs under R.C. 2947.23(C)**

{¶ 36} By itself, the plain language of R.C. 2947.23(C) does little to help us resolve whether the General Assembly intended for trial courts to consider a defendant's ability to pay when ruling on a motion to waive, suspend, or modify the payment of court costs. The statute tells us only that a trial court has jurisdiction to waive or alter court-costs-payment obligations and that the court's jurisdiction to do so extends beyond the time of a defendant's sentencing. That's it. R.C. 2947.23(C), by its plain terms, does not require a trial court to do anything at all. If we were to construe the statute based only on its text, as the majority determines we should, all we could possibly say about R.C. 2947.23(C) is that trial courts passively *retain* jurisdiction to waive, suspend, or modify the payment of court costs.

{¶ 37} But even the majority concedes that implicit in R.C. 2947.23(C) is a requirement that trial courts *exercise* their jurisdiction in determining whether a

defendant's obligation to pay court costs should be waived, suspended, or modified rather than just passively retain their jurisdiction to do so. The majority also admits that R.C. 2947.23(C) requires trial courts to act reasonably, without abusing their discretion, in the exercise of their jurisdiction. But what the majority apparently fails to understand is that a court does not act reasonably if it acts blindly and without regard to the purposes of the statute that gives the court the authority to act. In the case of R.C. 2947.23—Ohio's court-costs recoupment statute—we have stated that the purpose of levying and collecting court costs is to relieve taxpayers of the full burden of financing the criminal-justice system. *State v. Threatt*, 108 Ohio St.3d 277, 2006-Ohio-905, 843 N.E.2d 164, ¶ 15, *superseded by statute as stated in State v. Braden*, 158 Ohio St.3d 462, 2019-Ohio-4204, 145 N.E.3d 235.

{¶ 38} We have said that judgments imposing court costs are civil in nature and that court costs are to be neither viewed as nor imposed as punishment for the criminal conduct that led to the defendant's conviction and obligation to pay court costs. *See id*. At bottom, R.C. 2947.23's purpose of relieving Ohio taxpayers' financial burden is not advanced when a court attempts to collect court costs from a defendant who lacks the present or future ability to pay, nor is it advanced when collection results in only nominal payment that does not cover the costs associated with the collection effort. Indeed, as the concurring opinion observes—collection efforts themselves generate costs to the government and, by extension, impute those costs to taxpayers. Because a defendant's ability to pay court costs is inextricably linked to R.C. 2947.23's purpose of relieving the burden on the taxpayers, ability to pay is a vital consideration in every case in which a trial court rules on a R.C. 2947.23(C) motion to waive, suspend, or modify the payment of costs. This does not necessarily mean that whether a defendant can pay will be determinative in all instances. Rather, it simply means that R.C. 2947.23(C) requires a court to consider and weigh a defendant's ability to pay against other considerations in deciding whether to grant or deny a motion to waive or alter court-costs-payment obligations.

{¶ 39} Additionally, if a trial court's consideration of a defendant's ability to pay is not required, in many cases it would be difficult for a reviewing court to know whether the trial court's ruling on a motion to waive, suspend, or modify the payment of court costs was improperly motivated or based on a good-faith, lawful desire to recoup taxpayer money. For example, it would be improper to deny a defendant's motion out of a desire to punish the defendant. This appears to be what happened in this case, as evidenced by the trial court's statement in its judgment entry denying Taylor's motion that Taylor "made the choices which led to the accrual of the [court costs] at issue, and he must take responsibility for his conduct, as well as the resulting consequences." Here, we have some insight into the trial court's motivations for its denial, but in many instances reviewing courts will have nothing more to guide them than a judgment entry summarily denying or granting a motion. And in those instances, if a court's consideration of a defendant's ability to pay is not required, reviewing courts will be put in the impossible position of guessing why the trial court granted or denied the motion and then deciding, without any record-based background for framing its reasoning, whether the trial court abused its discretion. In other words, if ability to pay is not a required consideration and a defendant bases his motion on the fact that he is penniless and unable to pay, then the trial court could deny the motion merely on the basis that it does not have to consider the defendant's ability to pay in the first place. That outcome does not allow for meaningful appellate review. Perhaps the majority thinks that this is the correct outcome, but it cannot fairly be said that the legislature intended that outcome.

{¶ 40} In this case, the majority justifies its decision based on the language of R.C. 2747.23(C) alone, determining that "barring some textual basis, we will not read into the statute a requirement that courts consider a defendant's ability to pay" and that "Taylor fails to show that the statutory language imposes any such obligation." Majority opinion at ¶ 9. The majority's justification is problematic

17

for two reasons. As explained further below, first, it is simply not true that there is no textual basis in R.C. 2947.23 for an ability-to-pay requirement. But the second and more important reason is that the majority's justification fails to consider the purpose of a trial court's exercise of its continuing jurisdiction in the first place—to lighten the financial burden on taxpayers. Throughout its opinion, the majority wanders in search of explicit language within R.C. 2947.23(C) and the broader context of R.C. 2947.23, other related statutes, and even our caselaw that directs trial courts to consider a defendant's ability to pay court costs. When the majority does not find exactly what it is looking for, it throws up its hands and declares that a trial court exercising its jurisdiction under R.C. 2947.23(C) to decide whether to waive or alter the "payment of the costs" is not required to actually consider whether and to what extent the defendant *can pay* those costs. That is the wrong conclusion and the majority arrives there because it is looking in the wrong place. By focusing exclusively on the text of R.C. 2947.23, the majority fails to see what is right under its nose—that to achieve the statute's purpose, a trial court's consideration of the defendant's ability to pay is required.

{¶ 41} It is understandable that the majority would want to focus on the text of a statute when determining the legislative intent behind the statute. However, in situations like this one, in which the legislature has authorized courts to exercise their authority but is silent on how courts may exercise their authority, the only possible way for us to know how the courts may appropriately act is by considering the statute's purpose. Over the years, this court has looked to the underlying purpose of statutes in fashioning criteria that Ohio courts should, and sometimes must, consider in exercising their discretion. *See, e.g.*, *State v. Francis*, 104 Ohio St.3d 490, 2004-Ohio-6894, 820 N.E.2d 355, ¶ 40 (determining that timeliness of a motion to withdraw a guilty plea relating to R.C. 2943.031(D) may be considered even though the statute's language does not require that consideration); *State ex rel. WBNS TV, Inc. v. Dues*, 101 Ohio St.3d 406, 2004-Ohio-1497, 805 N.E.2d 1116,

¶ 47 (noting factors that courts must consider when exercising their discretion to award attorney fees in public-records-request cases even though the public-records statutes do not mention those factors); *State ex rel. Stephenson v. Indus. Comm.*, 31 Ohio St.3d 167, 170, 509 N.E.2d 946 (1987) (in determining whether to grant total-permanent-disability benefits, the Industrial Commission of Ohio must consider uncodified nonmedical factors such as the claimant's age, education, and work record). This court's establishment of guidelines and required criteria when interpreting a statute is not new.

**There is a textual basis for requiring a trial court to consider ability to pay**

{¶ 42} I also agree with Taylor's argument that the legislature's decision to grant trial courts continuing jurisdiction to waive, suspend, or modify the payment of court costs shows that the legislature intended for trial courts to consider ability to pay. When interpreting statutes, we recognize that " 'the General Assembly is not presumed to do a vain or useless thing, and that when language is inserted in a statute it is inserted to accomplish some definite purpose.' " *State v. Wilson*, 77 Ohio St.3d 334, 336, 673 N.E.2d 1347 (1997), quoting *State ex rel. Cleveland Elec. Illum. Co. v. Euclid*, 169 Ohio St. 476, 479, 159 N.E.2d 756 (1959). Regarding R.C. 2947.23(C), the legislature specifically gave trial courts three different options for how they may adjust a defendant's court-costs obligations—waiver, suspension, or modification. We must presume that the legislature picked those options in order to accomplish a specific purpose. Given that the legislature's purpose behind R.C. 2947.23 was to ease the financial burden on taxpayers, it is reasonable to assume that it intended for trial courts to decide whether to waive or alter court-costs obligations based on the defendant's financial circumstances.

{¶ 43} The majority rejects this argument as being "in tension with a statutory scheme that requires court costs to be imposed on all convicted defendants regardless of their ability to pay or indigency status." Majority opinion at ¶ 11. The majority claims that "[i]f present or future ability to pay is a condition for

retaining costs, it doesn't make much sense for it not to be a condition for imposing costs in the first place." *Id*. at ¶ 11. What the majority fails to acknowledge is that there is a difference between a judgment recognizing that a debt is owed and a judgment directing whether and to what extent the payment of that debt must be enforced. *See Piazza v. R. & S. Sarver, Inc.*, 17 Ohio App.3d 177, 478 N.E.2d 256 (8th Dist.1984), syllabus; Civ.R. 69. In the civil-law context, a court does not have to consider whether an alleged debtor can pay his debt before entering a judgment in favor of the creditor on a claim for moneys owed. Rather, that determination is appropriately made after the creditor secures a judgment and attempts to collect the debt by executing upon the judgment. *See generally* R.C. Chapter 2333 (statutes relating to proceedings in aid of execution of judgment). Accordingly, when viewing court costs for what they are—civil debts—it does make sense that a court would impose a judgment creating a debt without regard to the defendant's ability to pay and subsequently consider his ability to pay once actual collection efforts have commenced.

{¶ 44} Furthermore, when considering the purpose of R.C. 2947.23(C) in light of the requirement under R.C. 2947.23(A) that trial courts impose court costs regardless of the defendant's indigency status, Taylor's arguments that R.C. 2947.23(C) requires a trial court to consider the defendant's ability to pay are even more compelling. It is easy to imagine that the legislature—fully knowing that a court-costs judgment will issue regardless of a defendant's indigency—wanted to exclude defendants who do not have the ability to pay or who have only the limited ability to pay. That is because continued collection efforts can be costly to the government and would scarcely serve R.C. 2947.23's purpose of lightening the financial burden on taxpayers. It is also easy to imagine that the legislature wanted to leave open the possibility for collection efforts to resume if a person becomes able to pay in the future, which would also effectuate the purpose of the statute.

**{¶ 45}** The majority also claims that Taylor's textual argument works only if a requirement to consider ability to pay is the only thing that could make rational sense of the statutory language. The majority then notes several other considerations that might justify a court's decision to grant or deny a motion to waive, suspend, or modify the payment of costs. But every example that the majority gives is either clearly related to a defendant's ability to pay or would be fundamentally arbitrary.

**{¶ 46}** For instance, a trial court should not consider whether the court costs imposed are "unfairly excessive given the degree of wrongdoing," majority opinion at ¶ 12, because the imposition of court costs is not a penalty in a criminal case and the defendant's "degree of wrongdoing" is irrelevant to the court's decision. Any decision to waive, suspend, or modify the payment of court costs that is tied to the court's perception of the gravity of the defendant's crime is misguided. Likewise, consider the implications of the majority's suggestion that an appropriate consideration could be whether a defendant's obligation to pay court costs might impose a hardship on a third party. While that is certainly something that a trial court might consider, it would be relevant only in relation to the defendant's financial status, more broadly called his *ability to pay*. That is, if the third party is the defendant's dependent child, then the question whether the payment of court costs would impose a hardship would naturally involve whether the obligation would interfere with the defendant's ability to provide for his child. But it should go without saying that the child would be adversely impacted only if the defendant lacked the ability to both provide for the child *and* pay court costs. If the defendant had the ability to do both, we can assume that the child would not be adversely affected.

**{¶ 47}** The majority's final example is equally unpersuasive. It suggests that a court could reasonably determine that "R.C. 5120.133, which prevents a prison from disbursing an inmate's funds that, by statute, are 'exempt from

SUPREME COURT OF OHIO

execution, garnishment, attachment, or sale,' adequately addresses a defendant's present inability to pay." Majority opinion at ¶ 12, quoting R.C. 5120.133. The majority reasons that "[i]n such a case, a court might choose to keep the costs order in place in the event the defendant can pay later." *Id.* at ¶ 12. This is a stunning concession. What the majority describes is a court's consideration of the defendant's *present or future ability to pay*.

### Constitutional concerns

{¶ 48} I also agree with Taylor that if a defendant's ability to pay is not a necessary consideration under R.C. 2947.23(C), then the practice of recouping court costs from indigent defendants is constitutionally suspect. R.C. 2947.23 requires trial courts to impose against a convicted defendant the costs associated with his prosecution, which could include the costs of subpoenaing witnesses, empaneling a jury, and conducting a trial. The statute thus implicates a defendant's Sixth Amendment rights to compulsory process and trial by jury. A trial court's consideration of defendants' ability to pay court costs helps to ensure that defendants do not forego their Sixth Amendment rights merely because exercising them would be cost-prohibitive in the long run. .

{¶ 49} Indeed, in *Fuller v. Oregon*, 417 U.S. 40, 94 S.Ct. 2116, 40 L.Ed.2d 642 (1974), the United States Supreme Court upheld Oregon's costs-recoupment statute against a Sixth Amendment right-to-counsel challenge. The court concluded, "Oregon's legislation is tailored to impose an obligation only upon those with a foreseeable ability to meet it, and to enforce that obligation only against those who actually become able to meet it without hardship." *Id.* at 54. Thus, the Supreme Court upheld the statute *precisely because* it required courts to consider a defendant's ability to pay prior to ordering the defendant to pay the costs. Conveniently, the majority fails to consider this aspect of the court's decision in *Fuller* in declaring that the lack of an ability-to-pay requirement in R.C. 2947.23(C) does not render it constitutionally infirm.

**{¶ 50}** While the majority is correct in its assertion that *some* "safeguards protect criminal defendants who owe civil debts on the same terms as other civil debtors," majority opinion at ¶ 23, it does not consider that court-costs debtors are subject to disadvantages that other civil debtors are not. For example, as the concurring opinion points out, the failure to pay court costs can in some cases lead to the denial of federal benefits and participation in federal programs designed to help the poor. Other civil debtors would not face these exclusions. .

**{¶ 51}** Moreover, in the case of court costs owed by prisoners, it is not clear whether any of the collection exemptions found in R.C. 2329.66 might actually apply to typical funds within a prisoner's institutional account, despite the directive in R.C. 5120.133 that funds belonging to a prisoner may not be disbursed "if those funds are exempt from execution, garnishment, attachment, or sale to satisfy a judgment or order pursuant to" R.C. 2329.66.

**{¶ 52}** Many of the exemptions found in R.C. 2329.66 that apply to real property or tangible and intangible personal property presumably would not include funds held in a prisoner's account. *See, e.g.*, R.C. 2329.66(A)(1)(b) (exemption applying to a person's interest in one personal residence); R.C. 2329.66(A)(2) (exemption applying to a person's interest in one motor vehicle); R.C. 2329.66(A)(8) (exemption applying to a person's interest in a burial lot); R.C. 2329.66(A)(6)(b) (exemption applying to a person's interest in a life-insurance policy). And although R.C. 2329.66(A)(13) does exempt from garnishment a percentage of a person's "personal earnings," this court has never decided whether prison wages are personal earnings within the meaning of the statute, and Ohio's appellate courts that have examined the issue have determined that prison wages are not "personal earnings" exempt from garnishment, *see, e.g.*, *Leybovich v. Grover*, 12th Dist. Warren No. CA98-04-041, 1998 Ohio App. LEXIS 5188, *4 (Nov. 2, 1998), and *Porter v. Ward*, 5th Dist. Richland No. 07 CA 33, 2007-Ohio-5301, ¶ 39-41. If it is true that prison wages do not qualify as personal earnings,

then nothing protects these moneys, paltry though they are, from garnishment. Nor are money gifts from an inmate's friends and family exempt from garnishment. *See State ex rel. Turner v. Eberlin*, 117 Ohio St.3d 381, 2008-Ohio-1117, 884 N.E.2d 39, ¶ 18. This leaves one to wonder what funds would ever be left in a prisoner's account that are actually exempt from garnishment beyond the $25.00 that a prisoner is currently allowed to keep pursuant to Ohio Adm.Code 5120-5-03. If it is true that R.C. 2329.66 does little to protect prison accounts from garnishment, this in turn means that prisoners are in fact afforded fewer important protections from debt collection than both non-imprisoned court-costs debtors and other civil debtors.

## Conclusion

{¶ 53} For the foregoing reasons, I would hold that R.C. 2947.23(C) requires trial courts to consider a defendant's present or future ability to pay court costs when ruling on the defendant's motion to waive, suspend, or modify the payment of court costs. I would therefore affirm the judgment of the Second District Court of Appeals.

DONNELLY, J., concurs in the foregoing opinion.

_____

Mathias H. Heck Jr., Montgomery County Prosecuting Attorney, and Andrew T. French, Assistant Prosecuting Attorney, for appellant.

Timothy Young, Ohio Public Defender, and Patrick T. Clark, Assistant Public Defender, for appellee.

_____