[Cite as *State v. Stewart*, 2024-Ohio-1640.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
LAWRENCE COUNTY

| | | |
|---|---|---|
| State of Ohio, | : | Case No. 23CA1 |
| Plaintiff-Appellee, | : | <u>DECISION AND</u> <u>JUDGMENT ENTRY</u> |
| v. | : | |
| James D. Stewart, | : | |
| Defendant-Appellant. | : | **RELEASED 4/24/2024** |

_____

<u>APPEARANCES</u>:

Karyn Justice, Esq., The Law Office of Karyn Justice, LLC, Portsmouth, Ohio, for appellant.

Brigham M. Anderson, Lawrence County Prosecuting Attorney, and Andrea M. Kratzenberg, Lawrence County Assistant Prosecuting Attorney, Ironton, Ohio, for appellee.
_____

Hess, J.

{¶1} James D. Stewart appeals from a judgment of the Lawrence County Common Pleas Court convicting him, following a jury trial, of three counts of rape. Stewart presents four assignments of error asserting that (1) his "convictions are not supported by the manifest weight of sufficient evidence," (2) the trial court erred when it imposed financial sanctions against him, (3) trial counsel was ineffective for failing to request a waiver of court costs, and (4) his sentence is contrary to law. For the reasons which follow, we overrule the assignments of error and affirm the trial court's judgment.

## I.  FACTS AND PROCEDURAL HISTORY

{¶2}  In March 2022, Stewart was indicted on three counts of rape of E.S.[1] in violation of R.C. 2907.02(A)(2), first-degree felonies, alleged to have occurred on or about April 1, 2020, through June 30, 2020.  Stewart pleaded not guilty.  The matter proceeded to a jury trial.

### A.  E.S.'s Testimony

{¶3}  E.S. testified that Stewart is her biological father and that he had custody of her until June 2020.  In May 2020, when E.S. was 13 years old, she lived with Stewart, her siblings, and Stewart's girlfriends, Letitia Cisqavay (Letitia Gerrad at the time of trial) and Faith Long (Gerrad's niece).  One day that month, E.S. "got aggravated" while she was with Stewart and Long.  Stewart told E.S. that she "should start masturbating because it would help with" her "frustration and attitude."  E.S. testified that at some point, Long showed her pornography at Stewart's request.

{¶4}  E.S. also testified about three incidents in which Stewart engaged in sexual conduct with her that month.  The first incident happened one night when E.S. was sitting on the couch watching a movie with Stewart and Long.  Stewart told E.S. to "slide off" her overalls.  After E.S. "put them back on," Stewart asked her to perform oral sex on Long.  E.S. and Long performed oral sex on each other. E.S. testified that Stewart then performed "vaginal sex on Faith, over my head, and then also did the same thing to me."  E.S. testified that Stewart's penis entered her vagina.  E.S. testified that she did not want to have sex with Stewart and that she was forced to do so.  E.S. testified that he had been an abusive parent and that she was scared of him.  She also testified that Stewart choked

---

[1] E.S. changed her name after the alleged offenses occurred, so her initials are no longer E.S.  For purposes of this opinion, we will still refer to her as E.S.

Long during the first incident, "so it scared me and there was… yeah, it was a threat." E.S. felt like she had to have sex with him.

{¶5} The second incident happened the same night as the first incident, after E.S. went to bed. E.S. and her sister were asleep in E.S.'s bed. Stewart came into the bedroom, got E.S. up, bent her over the bed, and penetrated her vagina with his penis.

{¶6} The third incident happened the next day or the day after that when E.S. was alone with Stewart on the couch. Stewart slid her leg over his lap, had her sit on him, and then "vaginally penetrated again." Stewart also inserted his penis into E.S.'s mouth and had her perform oral sex on him.

{¶7} In June 2020, E.S. reported the incidents to T.P. E.S. testified that T.P. dated Stewart for a few years and that E.S. maintained a relationship with T.P. after they split up. T.P. contacted law enforcement and got E.S.'s siblings under the pretense of taking them on a boat ride. None of the children ever went back to Stewart's home. They went to live with T.P., who later adopted E.S.

{¶8} On cross-examination, E.S. admitted that in June or July 2020, she was interviewed at a hospital and said the incidents with Stewart happened "April-ish." E.S. testified that she "did not have a full time frame of it because we were out of school." E.S. admitted she did not mention the pornography during the interview. With respect to the first incident, E.S. admitted she told the interviewer that she was playing a game before the incident, that she refused to perform oral sex on Long, and that Long tried to perform oral sex on her but could not because Stewart was over top of Long. E.S. admitted she told the interviewer the second incident happened the morning after the first incident while the other kids were outside. She testified that after the interview, she realized that was

inaccurate when she "went over the timeline," but she did not tell anyone this prior to testifying. E.S. admitted she told the interviewer the third incident happened the evening after the second incident and talked about falling asleep at her desk. E.S. testified that she did not recall whether she was asleep at her desk or in her bed but recalled that she ended up bent over her bed. E.S. acknowledged that during the interview, she said that Stewart's penis was erect every time she saw it, had a "little bit of an angle on it," was "slop-sided" [sic], and "looked like a shrimp." She testified that in making the shrimp comment, she was "talking about the curvature."

**{¶9}** E.S. admitted that she did not like Stewart's military style of discipline or the fact that he prohibited her from dating, which she did anyway. E.S. admitted that she had said T.P. was the only one who had ever been there for her and that she called T.P. "mom" even when she lived with Stewart. However, E.S. denied making up the incidents with Stewart so she could live with T.P. E.S. testified, "I was fine with where I was at until everything went down."

## B. Long's Testimony

**{¶10}** Long testified that she met Stewart through Garred. Stewart and Garred lived together, but their relationship "seemed more on the open side of things." From around March or April 2020 until May or June 2020, Long lived with them, E.S., and other children. Long began to have a sexual relationship with Stewart without Garred's knowledge. Long did not recall being present for a conversation between Stewart and E.S. about masturbation. She recalled Stewart mentioning that E.S. "was questioning what masturbation was," and E.S. asking her about masturbation. Long testified that probably in late April 2020, she showed E.S. pornography. Then that night, when Long

and Stewart were having sex downstairs, Stewart had her get E.S., who was upstairs. He wanted Long and E.S. to perform oral sex on each other. They did so while Stewart watched. Then Stewart put his penis inside E.S.'s vagina and had sex with her. Long testified that she was drinking earlier that night, and so was E.S., with Stewart's permission. Long testified that Stewart did not threaten or choke her that night but also testified that she has "two bruises from him."

{¶11} At some point, Long told her doctor about the incident, and law enforcement became involved. Long pleaded guilty to raping E.S. She faced a maximum sentence of 11 to 16.5 years. She received a recommended sentence of three to four and a half years in prison, and the state agreed to not oppose release after she served two years. Long testified that she must register as a sex offender for life.

{¶12} Long admitted that she does not like Stewart and that in May 2022, she told investigators she would not make a statement unless it was going to get Stewart into trouble. When defense counsel asked if Long told investigators that Stewart had never been violent or abusive with her, Long testified, "If I said that, that wasn't true. I'm saying it now." Counsel then asked, "So, you gave false information to the investigators?" Long testified, "At that point, more than likely, I was just too nervous." Long maintained that her testimony was true.

## C. Garred's Testimony

{¶13} Garred testified that she had known Stewart for four or five years. They are friends but previously dated and lived together. Garred testified that she is familiar with Stewart's penis and that it is straight and "pretty large" when erect. She testified that Stewart's penis is "probably, at least, a good seven/eight inches uhm, and it's very thick.

Uhm, it doesn't have any deformities. There's no markings or anything on it, that I recall." Garred did not learn of Stewart's relationship with Long "until after the fact." She had no knowledge of Stewart having sex with E.S. Garred testified it was possible Stewart did so without her knowledge, but she "never noticed anything or saw anything that was suspicious that would make me think anything like that was happening." Garred testified that she would have known if Stewart had been in E.S.'s bedroom when no one else was around.

### D. Verdict and Sentencing

**{¶14}** The jury found Stewart guilty as charged. At the sentencing hearing, E.S. gave a victim impact statement and told the court Stewart deserved the maximum sentence. The state asked the court to impose maximum consecutive sentences. Defense counsel told the court that Stewart had "served his country," had "virtually no prior record," "maintains his innocence, which is his right to do," and planned to appeal. Counsel asked the court "for leniency" and "the minimum sentence on each count." The trial court gave Stewart an opportunity to speak, and he declined to say anything.

**{¶15}** The trial court sentenced Stewart to 11 to 16.5 years in prison on each count and ordered that the sentences run consecutively, for an aggregate sentence of 33 to 38.5 years in prison. The court ordered Stewart to pay a $20,000 fine on each count, for a total of $60,000 in fines. The court also assessed court costs against him and designated him a Tier III sex offender.

**{¶16}** Defense counsel then asked the court "to set aside the fines and costs that were imposed * * * based upon Mr. Stewart's indigency." Counsel stated, "This was a court appointed case. He's been indigent from the beginning. He has filed [sic] out his

financial disclosure form. Uh, and based upon the length of the sentence, he would not have a future or present ability to make any payments on those judgments for costs and fines." The trial court took the matter under advisement. Subsequently, the trial court memorialized Stewart's sentence, including the fines and costs, in a sentencing entry.

## II. ASSIGNMENTS OF ERROR

**{¶17}** Stewart presents four assignments of error:

I.     Mr. Stewart's convictions are not supported by the manifest weight of sufficient evidence.

II.    The court erred when it imposed financial sanctions against Mr. Stewart.

III.   Mr. Stewart received ineffective assistance of counsel for failing to request a waiver of court costs.

IV.   Mr. Stewart's sentence is contrary to law.

## III. FIRST ASSIGNMENT OF ERROR

**{¶18}** In the first assignment of error, Stewart contends that his convictions "are not supported by the manifest weight of sufficient evidence." Stewart maintains that the state failed to provide credible evidence sufficient to establish his guilt beyond a reasonable doubt. He asserts there are inconsistences between E.S.'s interview statements and testimony regarding when the incidents occurred, whether E.S. had oral sex with Long, and the circumstances under which the second incident occurred. Stewart claims there are inconsistencies between E.S. and Long's testimony regarding when events occurred, the masturbation discussions, whether E.S. drank before the first incident, and where E.S. was when the first incident began. In addition, Stewart claims there are inconsistencies between E.S. and Garred's testimony about the appearance of his penis.

**{¶19}** Stewart suggests that E.S.'s testimony is incredible because, in addition to the above inconsistencies: (1) E.S. did not report the incidents until June 2020; (2) E.S. reported the incidents to T.P., "whom she called 'Mom' and who helped devise a story about taking the other children on a boat ride in order to obtain custody of them"; (3) E.S. "admitted she had changed her recollection of events" but did not tell anyone prior to trial; and (4) Garred testified that she did not notice anything suspicious in the home. In addition, Stewart suggests Long's testimony is incredible because, in addition to the above inconsistencies, Long admitted that she refused to give a statement until she was assured that Stewart would get into trouble, admitted she lied to investigators, and testified pursuant to a negotiated plea agreement. Stewart also notes the state did not present any physical or expert evidence.

### A. Standard of Review

**{¶20}** In reviewing the sufficiency of the evidence for a conviction, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, *superseded by constitutional amendment on other grounds as stated in State v. Smith*, 80 Ohio St.3d 89, 102, 684 N.E.2d 668 (1997), fn. 4, and following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). "A sufficiency assignment of error challenges the legal adequacy of the state's prima facie case, not its rational persuasiveness." *State v. Anderson*, 4th Dist. Highland No. 18CA14, 2019-Ohio-395, ¶ 13. "That limited review does not intrude on the jury's role 'to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from

basic facts to ultimate facts.' " *Musacchio v. United States*, 577 U.S. 237, 243, 136 S.Ct. 709, 193 L.Ed.2d 639 (2016), quoting *Jackson* at 319.

**{¶21}** In determining whether a conviction is against the manifest weight of the evidence, an appellate court

> must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that reversal of the conviction is necessary. In order to satisfy this test, the state must introduce substantial evidence on all the elements of an offense, so that the jury can find guilt beyond a reasonable doubt.
>
> Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence. However, we are reminded that generally, it is the role of the jury to determine the weight and credibility of evidence. " 'A jury, sitting as the trier of fact, is free to believe all, part or none of the testimony of any witness who appears before it.' " *State v. Reyes-Rosales*, 4th Dist. Adams No. 15CA1010, 2016-Ohio-3338, ¶ 17, quoting *State v. West*, 4th Dist. Scioto No. 12CA3507, 2014-Ohio-1941, ¶ 23. We defer to the trier of fact on these evidentiary weight and credibility issues because it is in the best position to gauge the witnesses' demeanor, gestures, and voice inflections, and to use these observations to weigh their credibility.

(Citations omitted.) *Anderson* at ¶ 14-15. " 'Ultimately, a reviewing court should find a trial court's decision is against the manifest weight of the evidence only in the exceptional case where the evidence weighs heavily against the decision.' " *State v. Allen*, 4th Dist. Ross No. 21CA3736, 2022-Ohio-1180, ¶ 27, quoting *State v. Gillian*, 4th Dist. Gallia No. 16CA11, 2018-Ohio-4983, ¶ 28, citing *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, ¶ 330.

### B. Elements of the Offenses

**{¶22}** R.C. 2907.02(A)(2) states: "No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or

threat of force."  "A person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature."  R.C. 2901.22(A).  " 'Sexual conduct' means vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another."  R.C. 2907.01(A).  "Penetration, however slight, is sufficient to complete vaginal or anal intercourse."  *Id.*  " 'Force' means any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing."  R.C. 2901.01(A)(1).

{¶23} "A defendant purposely compels another to submit to sexual conduct by force or threat of force if the defendant uses physical force against that person, or creates the belief that physical force will be used if the victim does not submit."  *State v. Schaim*, 65 Ohio St.3d 51, 600 N.E.2d 661 (1992), paragraph one of the syllabus.  " ' "[S]ome amount of force must be proven beyond that force inherent in the crime itself." ' "  *State v. Torres*, 2023-Ohio-1406, 213 N.E.3d 287, ¶ 47 (4th Dist.), quoting *State v. Zimpfer*, 2d Dist. Montgomery No. 26062, 2014-Ohio-4401, ¶ 46, quoting *State v. Dye*, 82 Ohio St.3d 323, 327, 695 N.E.2d 763 (1998).  However, " '*any* amount of physical force or threat of physical force, however slight, is sufficient to support * * *' a rape conviction under R.C. 2907.02(A)(2)." (Emphasis and ellipsis sic.)  *State v. Artis*, 6th Dist. Lucas No. L-19-1267, 2021-Ohio-2965, ¶ 93, quoting *State v. Heiney,* 2018-Ohio-3408, 117 N.E.3d 1034, ¶ 122 (6th Dist.).

**{¶24}** "The force and violence necessary to commit the crime of rape depends upon the age, size and strength of the parties and their relation to each other." *State v. Eskridge*, 38 Ohio St.3d 56, 526 N.E.2d 304 (1988), paragraph one of the syllabus. The trial court instructed the jury:

> When the relationship between the victim and the defendant is one of child and parent or child and caretaker, the element of force need not be openly displayed or physically brutal. It can be subtle or slight and psychological or emotionally powerful. Evidence of an express threat of harm or evidence of significant physical restraint is not required. If you find beyond a reasonable doubt that under the circumstances in evidence the victim's will was overcome by fear or duress, or intimidation, the element of force has been proved.

The court also instructed the jury that a threat "includes a direct and indirect threat."

### C. Analysis

**{¶25}** The state introduced evidence from which any rational trier of fact could have found the essential elements of rape proven beyond a reasonable doubt, and in resolving conflicts in the evidence, the jury did not clearly lose its way or create such a manifest miscarriage of justice that reversal of the rape convictions is necessary. E.S. testified that when she was 13 years old, Stewart, her biological father, engaged in sexual conduct with her on three occasions while she was in his custody. E.S. testified that during the first incident, Stewart had vaginal sex with her. E.S. felt like she had to have sex with him because he had been an abusive parent, she feared him, and he choked Long during the incident, which scared her. E.S. testified that the second incident happened the same night as the first incident. She was asleep, and Stewart got her up, bent her over the bed, and inserted his penis into her vagina. E.S. testified that the third incident happened the next day or the day after that and that Stewart slid her leg over his lap, had her sit on him, "vaginally penetrated again," and inserted his penis into her mouth.

**{¶26}** While there is no physical evidence to corroborate E.S.'s testimony, " ' "[i]t is well settled that a rape conviction may rest solely on the victim's testimony, if believed, and that '[t]here is no requirement that a rape victim's testimony be corroborated as a condition precedent to conviction.' " ' " *State v. Horsley*, 2018-Ohio-1591, 110 N.E.3d 624, ¶ 74, quoting *State v. Canterbury*, 4th Dist. Athens No. 13CA34, 2015-Ohio-1926, ¶ 62, quoting *State v. Patterson*, 8th Dist. Cuyahoga No. 100086, 2014-Ohio-1621, ¶ 40; quoting *State v. Lewis*, 70 Ohio App.3d 624, 638, 591 N.E.2d 854 (4th Dist.1990). Based on E.S.'s testimony, some of which is corroborated by Long with respect to the first incident, the jury could conclude that on three occasions, Stewart engaged in sexual conduct with E.S. when he purposely compelled her to submit by force or threat of force.

**{¶27}** There are some inconsistencies between E.S.'s interview statements and trial testimony and between her trial testimony and the testimony of Long and Garred. However, E.S. and Long agreed on key points related to the first incident, such as that Stewart instigated oral sex between E.S. and Long before putting his penis into E.S.'s vagina. And again, the jury " ' "sitting as the trier of fact, is free to believe all, part or none of the testimony of any witness who appears before it." ' " *Anderson*, 4th Dist. Highland No. 18CA14, 2019-Ohio-395, at ¶ 15, quoting *Reyes-Rosales*, 4th Dist. Adams No. 15CA1010, 2016-Ohio-3338, at ¶ 17, quoting *West*, 4th Dist. Scioto No. 12CA3507, 2014-Ohio-1941, at ¶ 23. The jury was aware of the inconsistencies and potential biases of the witnesses. It is evident from the verdict that the jury credited E.S.'s version of events, and her testimony is not so incredible as to be unworthy of the jury's acceptance of it.

**{¶28}** Sufficient evidence supports the three rape convictions, and the convictions were not against the manifest weight of the evidence. Accordingly, we overrule the first assignment of error.

## IV. SECOND ASSIGNMENT OF ERROR

**{¶29}** In the second assignment of error, Stewart contends that the trial court erred when it imposed financial sanctions against him. Stewart asserts that R.C. 2929.19(B)(5) mandates that a court consider an offender's present and future ability to pay before it imposes a financial sanction, and if the court does not, the imposition of a financial sanction is contrary to law. He claims that even though the sentencing entry states the court considered his present and future ability to pay, "there is no evidence in the record that the court inquired as to [his] financial status or made a finding that he had the present or future ability to pay the fines." Stewart maintains that (1) he "was determined to be indigent at his arraignment"; (2) no inquiry was made into his financial status at his bond hearing; (3) he posted bond, but "no record was made as to whether he received assistance from family or other third parties"; (4) "[n]o inquiry was made into [his] employment history, his education, his source of income or potential income, or his health"; (5) Garred testified that he had not worked since 2018; (6) there is no information in the record concerning his employment history aside from the fact that he is a veteran "with a less than honorable discharge status"; and (6) he was about 35 years old at the time of sentencing and will be between 68 and 73 years old at the time of his release. He asserts that the record therefore indicates that he "is indigent and lacks the present or future ability to pay any financial sanction," so "[i]t was error for the court to impose fines and fail to waive court costs in this case."

## A. Fines

**{¶30}**  R.C. 2953.08 governs appeals based on felony sentencing guidelines.  R.C.

R.C. 2953.08(G)(2) states:

> The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing.  The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:
>
> (a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;
>
> (b) That the sentence is otherwise contrary to law.

"Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established."  *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.  A sentence is "otherwise contrary to law" when it is " ' "in violation of statute or legal regulations at a given time." ' "  *State v. Bryant*, 168 Ohio St.3d 250, 2022-Ohio-1878, 198 N.E.3d 68, ¶ 22, quoting *State v. Jones*, 163 Ohio St.3d 242, 2020-Ohio-6729, 169 N.E.3d 649, ¶ 34, quoting *Black's Law Dictionary* 328 (6th Ed.1990)

**{¶31}**  R.C. 2929.18(A) authorizes a trial court to sentence a felony offender "to any financial sanction or combination of financial sanctions authorized under this section." R.C. 2929.18(A)(3)(a) permits the court to impose a fine of "not more than twenty thousand dollars" for a first-degree felony.  R.C. 2929.19(B)(5) states that "[b]efore

imposing a financial sanction under section 2929.18 of the Revised Code or a fine under section 2929.32 of the Revised Code, the court shall consider the offender's present and future ability to pay the amount of the sanction or fine." " 'A court that imposes a financial sanction upon an offender may hold a hearing if necessary to determine whether the offender is able to pay the sanction or is likely in the future to be able to pay it,' R.C. 2929.18(E), but it is not required to do so, *State v. Moscoso*, 5th Dist. Muskingum No. CT2018-0012, 2018-Ohio-2877, ¶ 79." *State v. Brock*, 4th Dist. Adams Nos. 20CA1123, 20CA1124, 2021-Ohio-1279, ¶ 10.

{¶32} "In general, a sentencing court's imposition of a financial sanction under R.C. 2929.18 is contrary to law when the record fails to indicate that the court made even a cursory inquiry into the offender's present and future ability to pay the sanction." *Id.*, citing *State v. Lykins*, 2017-Ohio-9390, 102 N.E.3d 503, ¶ 11 (4th Dist.). " ' "This is a low standard." ' " *Id.*, quoting *Lykins* at ¶ 11, quoting *State v. Smith*, 2017-Ohio-7740, 97 N.E.3d 1068, ¶ 47 (10th Dist.). " 'There are no specific factors the trial court must consider in its analysis, nor must it make any specific findings.' " *State v. Strange*, 4th Dist. Adams No. 22CA1156, 2023-Ohio-495, ¶ 10, quoting *State v. Dwyer*, 2d Dist. Greene No. 2021-CA-16, 2022-Ohio-490, ¶ 53. " '[A]s long as the record contains some indication that the trial court considered the offender's present and future ability to pay the sanction or fine, the court's imposition of a financial sanction is not contrary to law.' " *Brock* at ¶ 10, quoting *Lykins* at ¶ 11.

{¶33} We do not clearly and convincingly find that the imposition of fines is contrary to law. "A trial court's statement in a judgment entry that it considered the offender's present and future ability to pay a fine is evidence that the trial court considered

the offender's ability to pay." *State v. Delgadillo-Banuelos*, 10th Dist. Franklin No. 18AP-729, 2019-Ohio-4174, ¶ 35.  In this case, the trial court expressly stated in the sentencing entry that it "considered the defendant's present and future ability to pay."

**{¶34}** Although the court did not have to make any specific findings, the sentencing entry states that the court "finds that the defendant is able to pay a fine."  Even though Stewart disagrees and asserts the information in the record shows he lacks the present or future ability to pay, "nothing in R.C. 2953.08(G)(2) authorizes this court to vacate a fine on the basis that the record does not support a sentencing court's finding on ability to pay under R.C. 2929.19(B)(5)." *Brock*, 4th Dist. Adams Nos. 20CA1123, 20CA1124, 2021-Ohio-1279, at ¶ 14.  "R.C 2953.08(G)(2)(a) permits an appellate court to modify or vacate a sentence if it clearly and convincingly finds that 'the record does not support the sentencing court's findings under' certain specified statutory provisions." *Jones*, 163 Ohio St.3d 242, 2020-Ohio-6729, 169 N.E.3d 649, at ¶ 28.  "R.C. 2929.19(B)(5) is not among the provisions listed." *Brock* at ¶ 14. "Only R.C. 2929.13(B) and (D), 2929.14(B)(2)(e) and (C)(4), and 2929.20(I) are specified."  *Jones* at ¶ 28. Moreover, "an appellate court's determination that the record does not support a sentence does not equate to a determination that the sentence is 'otherwise contrary to law' as that term is used in R.C. 2953.08(G)(2)(b)." *Id.* at ¶ 32.  Accordingly, we reject the contention that the trial court erred when it imposed the fines.

### B.  Court Costs

**{¶35}** "[C]ourt costs are not financial sanctions." *State v. Dawson*, 2017-Ohio-965, 86 N.E.3d 672, ¶ 42 (8th Dist.).  Therefore, R.C. 2929.19(B) "has no application to the imposition of court costs." *Id.*  "A trial court need not consider a defendant's ability to

pay, as required by R.C. 2929.19 for the imposition of financial sanctions, before imposing court costs." *Id.*

**{¶36}** "By statute, the imposition of court costs on all convicted defendants is mandatory." *State v. Taylor*, 161 Ohio St.3d 319, 2020-Ohio-3514, 163 N.E.3d 486, ¶ 6. R.C. 2947.23(A)(1)(a) states: "In all criminal cases, * * * the judge * * * shall include in the sentence the costs of prosecution * * * and render a judgment against the defendant for such costs." However, R.C. 2947.23(C) states that "[t]he court retains jurisdiction to waive, suspend, or modify the payment of the costs of prosecution * * * at the time of sentencing or at any time thereafter."

**{¶37}** Stewart maintains that his trial counsel did not move the trial court to waive court costs but suggests the trial court committed plain error by not waiving them sua sponte. However, trial counsel did move the trial court to waive court costs at the sentencing hearing. Counsel asked the court "to set aside the fines and costs that were imposed," asserting Stewart did not have the present or future ability to pay them given his indigency and the length of his sentence. The trial court took the matter under advisement and then implicitly denied the motion when it issued the sentencing entry. "We review a trial court's decision regarding a motion to waive, suspend, or modify the payment of costs under an abuse of discretion standard." *State v. Smith*, 2023-Ohio-1235, 212 N.E.3d 1112, ¶ 9 (4th Dist.), citing *State v. Bolin*, 4th Dist. Athens No. 21CA14, 2022-Ohio-3375, ¶ 6. " 'To find an abuse of discretion, an appellate court must determine the trial court's decision is unreasonable, arbitrary, or unconscionable.' " *Id.*, quoting *Bolin* at ¶ 6.

{¶38} R.C. 2947.23(C) "provides no explicit criteria that a court should use in deciding whether to waive * * * costs." *Taylor* at ¶ 8. "[A] trial court is not required to consider the defendant's ability to pay in assessing a motion to waive * * * court costs under R.C. 2947.23(C), though it is permitted to do so." *Id.* at ¶ 16. " '[W]aiver of costs is permitted—but not required—if the defendant is indigent.' " *Id.* at ¶ 7, quoting *State v. White*, 103 Ohio St.3d 580, 2004-Ohio-5989, 817 N.E.2d 393, ¶ 14. *Taylor* observed that aside from ability to pay,

> in the abstract, there are many other criteria that can equally justify a decision to waive, suspend, or modify the imposition of costs in a particular case. A court might, for instance, look to whether the costs are unfairly excessive given the degree of wrongdoing. Or a court might look to whether the costs impose a hardship on third parties. Or maybe a court would conclude that R.C. 5120.133, which prevents a prison from disbursing an inmate's funds that, by statute, are "exempt from execution, garnishment, attachment, or sale," adequately addresses a defendant's present inability to pay. In such a case, a court might choose to keep the costs order in place in the event the defendant can pay later.

*Id.* at ¶ 12. *Taylor* also explained the absence of explicit criteria in R.C. 2947.23(C) did not make the decision to waive, modify, or suspend costs "a matter of trial-court whim," stating:

> It is a basic principle of our legal system that a trial court's decision must not be arbitrary and cannot be based on considerations wholly unrelated to the decision it is tasked with making. A trial court could not, for instance, deny a motion to waive costs based on the flip of a coin or the color of a defendant's hair or because it is Tuesday. Neither could a court adopt a standing order to reject all such motions, as that would be opting out of any sort of rational assessment altogether.

*Id.* at ¶ 16.

{¶39} In addition, this court has recognized that while "an explanation for a trial court's decision regarding a motion to waive payment of court costs may facilitate a more meaningful appellate review," R.C. 2947.23(C) "does not require an explicit explanation."

*State v. Phillips*, 4th Dist. Scioto No. 20CA3905, 2022-Ohio-478, ¶ 13. We have stated that "because the statute is silent concerning findings, trial courts should not be required to make findings when ruling on a motion to waive the payment of court costs." *Id.* Therefore, we have found "no error" with a trial court's failure to include explicit findings in a decision on a motion under R.C. 2947.23(C). *Id.* at ¶ 14.

{¶40} Stewart has not shown that the trial court abused its discretion by not waiving court costs on the ground that he lacks the present or future ability to pay them. The trial court made no finding regarding his ability to pay court costs. But again, "a trial court is not required to consider the defendant's ability to pay in assessing a motion to waive * * * court costs under R.C. 2947.23(C), though it is permitted to do so," *Taylor*, 161 Ohio St.3d 319, 2020-Ohio-3514, 163 N.E.3d 486, at ¶ 16, and the court is not required to make explicit findings when ruling on such a motion, *Phillips* at ¶ 13-14.

### C. Summary

{¶41} For the foregoing reasons, we conclude the trial court did not err when it imposed the fines and court costs, and we overrule the second assignment of error.

### V. THIRD ASSIGNMENT OF ERROR

{¶42} In the third assignment of error, Stewart contends that he received ineffective assistance of counsel because his trial counsel did not request a waiver of court costs. However, as we explained above, Stewart's trial counsel did move the trial court to waive court costs at the sentencing hearing. Therefore, the third assignment of error is based on an incorrect factual premise, and we overrule it.

## VI.  FOURTH ASSIGNMENT OF ERROR

{¶43} In the fourth assignment of error, Stewart contends that his sentence is contrary to law.  He maintains that even though "trial courts have discretion to impose a prison sentence within the statutory range, they must still consider R.C. 2929.11 and R.C. 2929.12 before imposing a sentence."  Stewart suggests his sentence is inconsistent with the purposes of felony sentencing in R.C. 2929.11 because the trial court "imposed a maximum penalty for each count" despite his "lack of prior record."  Stewart also asserts that even though the trial court stated that it considered the seriousness and recidivism factors in R.C. 2929.12, "the record does not support the court's findings."  He also maintains that R.C. 2929.12(F) requires that the court consider an offender's military service record and whether the offender has a condition that is traceable to the service and that was a contributing factor in the commission of the offenses.  He claims the trial court "was made aware that [he] was a veteran," but "made no inquiry as to his emotional, mental or physical condition that resulted from that service or whether it was a contributing factor in the commission of the offenses."  Stewart asserts that "[b]ecause the court failed to consider this factor, and because the court's imposition of a maximum sentence is not supported by the record," his sentence should be vacated, and the matter should be remanded for resentencing "after consideration of all relevant factors as required by statute."

### A.  Pertinent Statutes

{¶44} As previously noted, R.C. 2953.08 governs appeals based on felony sentencing guidelines, and division (G)(2) of the statute provides:

> The appellate court may increase, reduce, or otherwise modify a sentence
> that is appealed under this section or may vacate the sentence and remand

the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:

(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

(b) That the sentence is otherwise contrary to law.

**{¶45}** R.C. 2929.11 states:

(A) A court that sentences an offender for a felony shall be guided by the overriding purposes of felony sentencing. The overriding purposes of felony sentencing are to protect the public from future crime by the offender and others, to punish the offender, and to promote the effective rehabilitation of the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources. To achieve those purposes, the sentencing court shall consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both.

(B) A sentence imposed for a felony shall be reasonably calculated to achieve the three overriding purposes of felony sentencing set forth in division (A) of this section, commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders.

* * *

**{¶46}** R.C. 2929.12(A) states:

Unless otherwise required by section 2929.13 or 2929.14 of the Revised Code, a court that imposes a sentence under this chapter upon an offender for a felony has discretion to determine the most effective way to comply with the purposes and principles of sentencing set forth in section 2929.11 of the Revised Code. In exercising that discretion, the court shall consider the factors set forth in divisions (B) and (C) of this section relating to the seriousness of the conduct, the factors provided in divisions (D) and (E) of this section relating to the likelihood of the offender's recidivism, and the

factors set forth in division (F) of this section pertaining to the offender's service in the armed forces of the United States and, in addition, may consider any other factors that are relevant to achieving those purposes and principles of sentencing.

R.C. 2929.12(F) states: "The sentencing court shall consider the offender's military service record and whether the offender has an emotional, mental, or physical condition that is traceable to the offender's service in the armed forces of the United States and that was a contributing factor in the offender's commission of the offense or offenses."

{¶47} "Because both R.C. 2929.11 and R.C. 2929.12 require the trial court to consider the factors outlined in those two statutory provisions, * * * a trial court's failure to consider the factors would render the sentence * * * 'contrary to law.' " *State v. Poole*, 4th Dist. Adams No. 21CA1151, 2022-Ohio-2391, ¶ 17. However, "neither R.C. 2929.11 nor 2929.12 requires a trial court to make any specific factual findings on the record." *Jones*, 163 Ohio St.3d 242, 2020-Ohio-6729, 169 N.E.3d 649, at ¶ 20. " '[I]n the absence of an affirmative demonstration by the defendant to the contrary, we may presume that the trial court considered [these statutes].' " *State v. Smith*, 2020-Ohio-5316, 162 N.E.3d 898, ¶ 52 (4th Dist.), quoting *State v. Chandler*, 1st Dist. Hamilton No. C-190153, 2020-Ohio-164, ¶ 8.

### B. Analysis

{¶48} We do not clearly and convincingly find that Stewart's sentence is contrary to law because the trial court violated R.C. 2929.11 and R.C. 2929.12. At the sentencing hearing and in the sentencing entry, the trial court stated that it considered the purposes and principles of sentencing in R.C. 2929.11 and the seriousness and recidivism factors in R.C. 2929.12. Although the court did not explicitly mention R.C. 2929.12(F), the court later broadly stated in the sentencing entry that it had "considered R.C. 2929.12."

Contrary to what Stewart suggests, R.C. 2929.12(F) requires only that the court consider an offender's military service record and whether the offender has a condition traceable to the service which contributed to the offenses. The statute does not put any burden on the court to solicit information as to whether the offender has such a condition. Therefore, Stewart's sentence is not contrary to law because the trial court did not inquire about whether he suffered from a condition traceable to his military service that contributed to him raping E.S.

{¶49} Moreover, Stewart's suggestion that his sentence is contrary to law because it is not supported by the record under R.C. 2929.11 and 2929.12 is not well-taken. Again, "R.C 2953.08(G)(2)(a) permits an appellate court to modify or vacate a sentence if it clearly and convincingly finds that 'the record does not support the sentencing court's findings under' certain specified statutory provisions." *Jones* at ¶ 28. "But R.C. 2929.11 and 2929.12 are not among the statutory provisions listed in R.C. 2953.08(G)(2)(a)." *Id.* Moreover, "an appellate court's conclusion that the record does not support a sentence under R.C. 2929.11 or 2929.12 is not the equivalent of a conclusion that the sentence is 'otherwise contrary to law' as that term is used in R.C. 2953.08(G)(2)(b)." *Id.* at ¶ 34. Consequently, "R.C. 2953.08(G)(2) does not permit an appellate court to conduct an independent review of a trial court's sentencing findings under R.C. 2929.12 or its adherence to the purposes of felony sentencing under R.C. 2929.11." *Bryant*, 168 Ohio St.3d 250, 2022-Ohio-1878, 198 N.E.3d 68, at ¶ 21, citing *Jones* at ¶ 41-42. "R.C. 2953.08(G)(2) does not allow an appellate court to modify or vacate a sentence based on its view that the sentence is not supported by the record under R.C. 2929.11 and 2929.12." *Id.* at ¶ 22.

**{¶50}** For the foregoing reasons, we conclude that Stewart's sentence is not contrary to law, and we overrule the fourth assignment of error.

VII.  CONCLUSION

**{¶51}** Having overruled the assignments of error, we affirm the trial court's judgment.

JUDGMENT AFFIRMED.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT IS AFFIRMED and that appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Lawrence County Common Pleas Court to carry this judgment into execution.

<u>IF</u> A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted. The purpose of a continued stay is to allow appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. & Wilkin, J.: Concur in Judgment and Opinion.


For the Court


BY: _____
        Michael D. Hess, Judge



## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**