[Cite as *Grossman v. Morrison*, 2025-Ohio-5016.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Kurtis Grossman, | : | |
| Plaintiff-Appellee, | : | No. 24AP-154 |
| | | (C.P.C. No. 18JU-11991) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Jessica Morrison, | : | |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on November 4, 2025

**On brief**: *Mitchell A. Williams*, Public Defender, and *Timothy E. Pierce*, for appellant. **Argued:** *Timothy E. Pierce*.

APPEAL from the Franklin County Court of Common Pleas,
Division of Domestic Relations, Juvenile Branch

EDELSTEIN, J.

{¶ 1}  Defendant-appellant, Jessica Morrison ("mother"), appeals from the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, holding her in contempt of court for the nonpayment of guardian ad litem ("GAL") fees in a custody case and sentencing her to a suspended three-day jail sentence contingent on her monthly payments toward the arrearage.

{¶ 2}  For the reasons that follow, we reverse the trial court's judgment, in part, and remand this cause with instructions to vacate the February 1, 2024 contempt order and engage in further proceedings consistent with this decision and the applicable law.

## I.  FACTS AND PROCEDURAL OVERVIEW

{¶ 3}  Mother and plaintiff-appellee, Kurtis Grossman, ("father") are the parents of three minor boys.  They have never been married.  The finding of contempt in this case

arose from the protracted custody and visitation battle that began in 2018 when father filed a complaint for allocation of parental rights and responsibilities. After the parties reached a full agreement to resolve father's complaint for parenting time, the case was dispensed with on July 8, 2019.

{¶ 4} The matter was reopened in early 2020 when the boys' maternal grandmother filed a motion for custody and requested the appointment of a GAL to protect the children's interests. On July 13, 2020, a juvenile magistrate appointed Kyle Tisdale as GAL on the condition that the maternal grandmother and father equally pay half of the GAL's fees and expenses.[1] (*See* July 13, 2020 Hearing Tr. at 18-20, 29, 33.) After mother tested positive for illegal drugs, maternal grandmother filed a motion requesting that the GAL fees be equally apportioned between maternal grandmother, father, and mother. (*See* Nov. 17, 2020 Mot.) On January 21, 2021, the magistrate granted her motion, ordering that maternal grandmother pay 33 percent, father pay 34 percent, and mother pay 33 percent of the GAL fees.

{¶ 5} Following the GAL's appointment, father, mother, and maternal grandmother filed numerous motions for custody, increased visitation rights, and other matters. Relevant here, the magistrate modified its GAL fee allocation order on September 19, 2022 to require mother and father to equally share the GAL fees based on the court's modification of maternal grandmother's custodial status. As a result of the extensive litigation, the fees for the GAL's services grew to a substantial amount.

{¶ 6} On February 9, 2023, the GAL moved for an order of contempt against mother for nonpayment of her portion of GAL fees, alleging mother had an outstanding balance of $965 as of January 27, 2023. Thereafter, father, mother, and maternal grandmother filed several motions concerning various matters, further increasing the fees for the GAL's services. On June 5, 2023, mother moved for reallocation of the GAL fees, citing her indigent status and concerns about the propriety of being disproportionately

---

[1] On review of the transcript from the July 13, 2020 hearing—at which mother was not present—the magistrate stated she would be allocating the GAL fees "fifty-fifty" between maternal grandmother and father. (*See* July 13, 2020 Hearing Tr. at 18.) The magistrate further indicated that, once mother was served with a copy of maternal grandmother's motion for appointment of a GAL, she could reallocate the GAL fees. (*See* July 13, 2020 Hearing Tr. at 29, 33.) We note, however, that the July 13, 2020 form entry appointing a GAL failed to accurately reflect the ordered allocation because it ordered father and mother (not maternal grandmother) to split the GAL fees.

billed for father's communications with the GAL. (*See* June 5, 2023 Mot. for Reallocation of GAL Fees.) And on June 29, 2023, the magistrate entered an amended order allocating 60 percent of the GAL fees to father and 40 percent of the GAL fees to mother, effective June 28, 2023.

{¶ 7} The matter came before a juvenile magistrate on August 16, 2023 and August 17, 2023 for an evidentiary hearing on the GAL's motion for contempt against mother and other pending motions. On February 1, 2024, the juvenile court adopted the magistrate's decision finding mother in contempt for her failure to pay the GAL fees (a total of $2,921 as of August 2023) and sentencing her to three days in jail. The court suspended mother's jail sentence so long as she makes payments of $100 by the 10th of each month to the GAL until the balance is paid in full.

{¶ 8} Mother appeals from that judgment, assigning the following two errors for our review:

> [I.] THE LOWER COURT PLAINLY ERRED WHEN IT FOUND MOTHER JESSICA MORRISON IN INDIRECT CIVIL CONTEMPT FOR NOT PAYING HER PURPORTED SHARE OF FEES TO THE CHILDREN'S GAL FOR SERVICES HE PERFORMED DURING THE CASE. THE LOWER COURT'S ACTIONS VIOLATED MOTHER'S RIGHT TO DUE PROCESS OF LAW UNDER THE FIFTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION, HER RIGHT TO DUE COURSE OF LAW UNDER ARTICLE I, SECTIONS 1 AND 16 OF THE OHIO CONSTITUTION, HER RIGHT TO NOT BE IMPRISONED FOR DEBT IN ANY CIVIL ACTION UNDER ARTICLE I, SECTION 15 OF THE OHIO CONSTITUTION, JUV. R. 4(G), CIV. R. 75(B)(2) AND (D), AND R.C. 3109.04(C).
>
> [II.] THE LOWER COURT'S DECISION FINDING MOTHER JESSICA MORRISON IN CONTEMPT AND ITS IMPOSITION OF A SUSPENDED THREE-DAY JAIL SENTENCE MUST BE VACATED BECAUSE THE COURT DEPRIVED HER OF THE RIGHT TO THE ASSISTANCE OF COUNSEL AT ALL STAGES OF THE CONTEMPT TRIAL IN VIOLATION OF HER RIGHTS UNDER THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION, ARTICLE I, SECTIONS 1, 10 AND 16 OF THE OHIO CONSTITUTION, R.C. 2151.352, JUV. R. 4(A), JUV. R. 29(B)(3) AND (B)(4).

## II. LEGAL ANALYSIS

{¶ 9}    This case involves mother's nonpayment of GAL fees incurred after her initial deposit was exhausted.  On appeal, mother argues the trial court erred when it held her in contempt for failure to pay these additional GAL fees.

{¶ 10}  Generally, "an appellate court will not reverse a trial court's determination regarding contempt proceedings absent an abuse of discretion." *Powell v. Lawson*, 2019-Ohio-4993, ¶ 28 (10th Dist.), citing *Hopson v. Hopson*, 2005-Ohio-6468, ¶ 9 (10th Dist.), citing *State ex rel. Ventrone v. Birkel*, 65 Ohio St.2d 10, 11 (1981).  However, mother did not raise this issue in timely objections to the magistrate's decisions or at any other time before the trial court.  Therefore, pursuant to Civ.R. 53(D)(3)(b)(iv) and Juv.R. 40(D)(3)(b)(iv), we will consider only whether the trial court committed plain error.  *See, e.g.*, *In re J.M.B.*, 2007-Ohio-3876, ¶ 13 (10th Dist.).  In doing so, we recognize that we may apply plain error "only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *Goldfuss v. Davidson*, 79 Ohio St.3d 116-17 (1997).  For the following reasons, we find plain error here.

{¶ 11}  In this case, neither mother nor father sought the appointment of a GAL.  Rather, the GAL was appointed on maternal grandmother's motion when she sought custody in 2020, years after the case began.  (*See* July 13, 2020 Order Appointing GAL.)  Thus, the parties did not seek to incur GAL fees of their own volition, and mother took issue with the GAL's services and billing practices.  (*See* June 5, 2023 Mot. for Reallocation of GAL Fees; June 7, 2023 Mot. to Remove or Replace GAL.)

{¶ 12}  Nonetheless, given the nature of this complex case, there is no reason to doubt that the GAL provided beneficial services to both the parents and their children.  Thus, he is entitled to fair compensation for those services.  Still, various statutes, rules, and policies govern what is fair to charge an indigent party and limit the trial court's authority to authorize fees under certain circumstances.  Because the trial court did not comply with those limitations, we find mother is entitled to relief, in part, based on a correct application of the rules that govern GAL fees in custody cases.

{¶ 13} The magistrate issued orders appointing the GAL and allocating fees on July 13, 2020 (50 percent to maternal grandmother; 50 percent to father), January 21, 2021 (34 percent to father, 33 percent to mother, 33 percent to maternal grandmother), September 19, 2022 (50 percent to father, 50 percent to mother), and June 29, 2023 (60 percent to father, 40 percent to mother). The three orders allocating GAL fees to mother cited Loc.R. 15 of the Franklin County Court of Common Pleas, Division of Domestic Relations; Loc.R. 27 of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch ("Juv. Loc.R. 27"); and Sup.R. 48.02.

{¶ 14} Relevant here, Juv. Loc.R. 27(K) addresses the payment of GAL fees. It provides:

> ***Except as set forth in §J***, the court shall require the parties to post a deposit to secure the fees of the guardian ad litem and shall apportion the fees between the respective parties in accordance with Sup. R. 48.02(H)(3). The total deposit shall be at least $800.00 unless otherwise indicated by the guardian ad litem. All deposits and fees shall be paid directly to the guardian ad litem and processed through the guardian ad litem's IOLTA account.
>
> The guardian ad litem shall keep accurate records of the time spent, services rendered, and expenses incurred in each case and shall provide monthly billing statements to the parties and counsel for the parties. The guardian ad litem shall bill in increments of no greater than one-tenth (.1) hour. The parties shall pay all accrued guardian ad litem fees within 14 days of any request pursuant to the order allocating the guardian ad litem's fees.
>
> ***A guardian ad litem may file a motion and include a proposed order or entry for additional fees at any time if either party fails to pay accrued fees in a timely manner***. The court may grant any such motion sua sponte in accordance with Sup. R. 48(H)(4). Any motion for fees shall be accompanied by an affidavit setting forth the following: (1) all accrued and all outstanding fees; (2) a record of monthly billing statements provided to the parties; and (3) when each request for additional fees was made to the parties.
>
> The court shall retain jurisdiction to reallocate the guardian ad litem's fees along with all costs of the proceedings upon motion and / or at the conclusion of the case, and in accordance with Sup. R. 48.02(H). Each party shall be responsible for paying all

fees as ordered until such time as a motion for reallocation has been decided. The filing of a motion for reallocation of fees shall not act as a waiver of that party's obligation to pay fees in accordance with the current order.

If not provided at the time of final hearing, the guardian ad litem shall file a motion for fees within seven (7) days after final hearing (or as otherwise directed by the court). The final request for fees shall be in accordance with Sup. R. 48.02(H).

Failure by either party to pay guardian ad litem fees or additional deposits as ordered by the court may result in the limiting of evidence at time of trial or other sanctions as the court may deem appropriate. A request for sanctions may be made upon motion of any party or upon the court's own motion. The choice of sanction shall be in the sole discretion of the court.

The court may enforce the payment of fees as set forth in Sup. R. 48.02(I). Any existing order for fees, and all fees as ordered pursuant to the order/entry appointing the guardian ad litem, shall remain due and payable to the guardian ad litem regardless of whether any action remains pending or whether either party withdraws or dismisses their motions. A motion for fees may be ruled on after a voluntary dismissal of any underlying motion or complaint, as the issue of guardian ad litem fees is a collateral issue not related to the merits of the action.

(Emphasis added.)

{¶ 15} Juv. Loc.R. 27(J) further provides for pro bono or reduced fee appointments in matters involving indigent parties:

A guardian ad litem may be appointed on a pro bono or reduced fee basis if the court determines that the parties lack the appropriate funds to pay for the services of the guardian ad litem at the time of appointment. The court shall consider those factors set forth in Sup. R. 48.02(H)(1) and (3), as well as either party's financial affidavit(s) or affidavit of indigency. The court shall have the discretion to waive initial deposits, all fees, or a portion of fees for the guardian ad litem, and shall indicate the portion of fees that are to be waived at the time of appointment. The court shall maintain jurisdiction to require fees or trial deposits to be paid after designated pro bono services have been exhausted, as well as to order payment or reimbursement of expenses incurred by the guardian ad litem. Should either

party no longer qualify for indigency status during the pendency of the matter, fees may be ordered in the discretion of the court.

It shall be the responsibility of the guardian ad litem to report to the Legal Director or his/her designee all pro bono and/or reduced fee appointments. Failure to report pro bono appointments may result in additional pro bono appointments in a calendar year.

{¶ 16} Sup.R. 48.02(H) concerns GAL fee determinations in cases involving allocation of parental rights and responsibilities. It provides:

(1) A court appointing a guardian ad litem in a case involving allocation of parental rights and responsibilities shall make a determination of the ability of any party to pay a deposit for the fees and expenses to the guardian ad litem and may reconsider that determination at any time prior to conclusion of the case. In making this determination, the court shall consider all of the following:

(a) The income, assets, liabilities, and financial circumstances of the parties, as demonstrated by an affidavit, testimony to the court, or evidence of qualification for any means-tested public assistance;

(b) The complexity of the issues;

(c) The anticipated expenses, including the travel of the guardian ad litem.

(2) At any time prior to the conclusion of a case, a guardian ad litem may submit a motion for payment. A guardian ad litem shall submit a motion for payment upon conclusion of the duties. Any motion shall itemize the duties performed, time expended, and costs and expenses incurred pursuant to Sup.R. 48.03(H)(1).

(3) In determining the allocation of guardian ad litem fees and expenses, a court shall consider any relevant factor, including any of the following:

(a) The rate or amount of compensation of the guardian ad litem;

(b) The sources of compensation of the guardian ad litem, including the parties, any specialized funds allocated for payment of the guardian ad litem, or pro bono contribution of services by the guardian ad litem;

(c) The income, assets, liabilities, and financial circumstances of the parties, as demonstrated using an affidavit, testimony to the court, or evidence of qualification for any means-tested public assistance;

(d) The conduct of any party resulting in the increase of the guardian ad litem fees and expenses without just cause;

(e) The terms and amount of any installment payments.

(4) Unless a hearing is requested by a party or the court within fourteen days after a motion for payment is filed, a court shall issue an order regarding payment of guardian ad litem fees and expenses approving or denying any portion of the requested fees and expenses and allocating payment to one or more of the parties as appropriate.

{¶ 17} Regarding the enforcement of payment of GAL fees, Sup.R. 48.02(I) states:

(1) If the fees and expenses of a guardian ad litem exceed the deposits or installment payments ordered and made, a court may do any of the following:

(a) Issue a lump-sum judgment against any party owing guardian ad litem fees and expenses at the time of the determination of fees or at any further proceedings regarding payment of fees;

(b) Enforce the payment of fees and expenses of the guardian ad litem through contempt of court proceedings;

(c) Enforce any order regarding the payment of guardian ad litem fees and expenses in any other manner authorized by law.

(2) A court shall not delay or dismiss a proceeding solely because of the failure of a party to pay guardian ad litem fees and expenses required to be paid by the court.

(3) The inability of a party to pay guardian ad litem fees and expenses ordered by a court shall not delay any final entry.

{¶ 18} All three orders allocating GAL fees to mother contained the following advisement: "The Parties are hereby given notice that failure to pay the Guardian ad Litem's fees as ordered herein * * * may result in a finding of contempt of court, limitation of evidence, dismissal of claims for relief pursuant to Civil Rule 41(B)(1), or such other sanctions *as allowed by law*." (Emphasis added.) (Mag.'s Orders.)

### A. The trial court did not follow the requirements of Juv. Loc.R. 27(K) and Sup.R. 48.02(I) for payment of outstanding fees.

{¶ 19} Initially, we are concerned about the procedure by which the contempt finding was reached. Before filing his motion for contempt against mother on February 9, 2023, the GAL did not file a motion for payment and affidavit, as contemplated by Juv. Loc.R. 27(K) and Sup.R. 48.02(I). Even if we construed the GAL's motion for contempt as a motion for payment of outstanding fees, his supporting affidavit failed to include "*all* accrued and all outstanding fees." (Emphasis added.) Juv. Loc.R. 27(K). Although the GAL attached a copy of his billing statements as Exhibit A to his February 9, 2023 affidavit, it only shows billing entries from "10/21" to "1/25." (GAL Ex. A.) Also noticeably absent from each billing entry is the year the billed event occurred, though it appears the billing events charged on the statement provided run from October 21, 2022 through January 25, 2023. However, mother has been responsible for paying the GAL's fees since January 21, 2021. And, although the GAL acknowledged at the August 2023 hearing that mother had paid him $720 (*see* Aug. 17, 2023 Hearing Tr. at 203), the services performed in conjunction with those payments are not reflected in the billing statements he filed on February 9, 2023 or produced at the August 2023 hearing. Suffice it to say, then, that the GAL failed to provide the court with information about *all* accrued fees, as required by Juv. Loc.R. 27(K)—namely, itemized billing statements for services performed between January 21, 2021 and October 20, 2022.

{¶ 20} Indeed, on review of the record before us, it appears that, other than the January 21, 2021, September 19 2022, and June 29, 2023 orders allocating GAL fees and ordering the parties to deposit money into the GAL's trust account, the trial court played no role in reviewing and approving GAL fees after the parties' deposits were exhausted.

Other than the billing statement submitted by the GAL at the August 2023 hearing for events occurring between "10/21" and "8/17" (Aug. 17, 2023 Hearing Tr., GAL Ex. 4), it does not appear the GAL submitted ***any*** bills to the trial court for review and approval of additional fees—as contemplated by Juv. Loc.R. 27(K)—before attempting to collect additional fees from the parties and, when left unpaid, moving to hold mother in contempt. Thus, we have concerns about the propriety of the GAL continuing the investigation and collecting additional fees from the parties ***without*** approval from the court after their deposits had been exhausted. *See, e.g.*, *Nyamusevya v. Nkurunziza*, 2011-Ohio-5287, ¶ 3, 14-18 (10th Dist.) (finding no error in trial court's order granting GAL's motion for interim fees and ordering an additional deposit by the parties).

{¶ 21} Further, the GAL failed to provide the court with a record of monthly billing statements provided to the parties or to specifically state when each request for additional fees was made to the parties. *See* Juv. Loc.R. 27(K). The trial court should have required the GAL to provide the necessary information before taking any action on the GAL's contempt motion.

{¶ 22} We also have concerns about the substance of the bills submitted by the GAL to the court in support of his motion for contempt against mother. The GAL produced a revised billing statement at the August 2023 hearing for events occurring between "10/21" and "8/17." (Aug. 17, 2023 Hearing Tr., GAL Ex. 4.) Again, we note he did not include years for any of these billing entries and failed to include billing statements depicting ***all*** accrued fees in this case. But, more concerningly, the GAL consistently lumped multiple tasks into a single billable entry, a practice known as block-billing. *See State ex rel. Harris v. Rubino*, 2018-Ohio-5109, ¶ 6. As recognized by the Supreme Court of Ohio, combining multiple tasks into a single entry complicates the process of determining whether the time spent on a particular activity is reasonable. *See id.* at ¶ 6-7. After reviewing the attorney fee bills in that case, the court announced it would no longer grant attorney fee applications that include block-billed time entries. *Id.* at ¶ 7

{¶ 23} The court did not issue a statewide ban on block-billing, so *Rubino* does not necessarily preclude an award of fees based on block-billed entries. *See, e.g.*, *Brantley, Inc. v. Tornstrom*, 2024-Ohio-2908, ¶ 32 (8th Dist.). However, we note a GAL's block-billing practice can be problematic when it prevents a court from evaluating whether "[t]he

conduct of any party result[ed] in the increase of the guardian ad litem fees and expenses without just cause" when determining the allocation of GAL fees. *See* Sup.R. 48.02(H)(3).

{¶ 24} The following chart itemizes just some of the more notable block-billed services exactly as they appeared on the billing statement submitted to the court by the GAL at the August 2023 hearing:

| DATE | SERVICES | HOURS |
|---|---|---|
| 10/29 | OA with Father; Review of Document; PC to school; Review of Photos | 2.3 |
| 11/8 | Review of emails from Father; Response to emails from counsel; Email from Mother to schedule OA | 0.6 |
| 11/22 | Review of emails (many long emails); Review of local Rule; Review of Temp. orders; Review of file; PC to school; Email to counsel; Review of TRO Filed | 1.7 |
| 12/1 | Meeting with children at school; Emails to Father's counsel; Mandatory report to FCCS; PC with Father attorney | 2.3 |
| 12/8 | Texts and emails with Dad; Review of and organizing of records and documents; PC to school | 0.5 |
| 12/15 | Email from Court and counsel; Email to Dad Counsel; Email from Court and counsel; Receipt of Hearing notice; Email to Mom to confirm HV | 0.6 |
| 1/3 | Review of emails from Mother Counsel; Review of emails provided and attached | 1.3 |
| 1/4 | PC with school; PC to Father's Attorney; PC to CS; Email with school workers; PC with Father's Attorney | 1.3 |
| 1/5 | Hearing; Speak with Magistrate and Duty Magistrate regarding TO request and 5th floor Complaint; Email and PC to Muskingum County CS; PC to Father | 2.3 |
| 1/6 | Email to counsel; Draft of Motion for TO; filing of Motion | 0.8 |
| 1/18 | PC with Father Attorney; Communication with Court; PC with CS; Email with CS[;] PC with Father attorney; PC with CS worker; Conversation with the Court | 0.6 |
| 2/2 | PC to Dad Attorney; PC with Muskingum CS; PC to All well in Zanesville | 0.5 |
| 2/9 | PC with Dad Attorney; Email with counsel; Meeting with Dad; Hearing | 1.3 |
| 2/13 | Review of fax; email to Dad counsel; Email to Mother and counsel; creation of waiver | 0.5 |
| 2/14 | PC with Dad; Email with Springfield PD; PC with CS; Review of CAC; PC with Springfield PD; Email to Father's counsel | 1.5 |
| 2/22 | PC with Dad Attorney; PC with Dad; PC with CS; School Visit with kids; PC with Mom attorney | 2.3 |
| 4/7 | Hearing; PC with Dad; PC with CS | 1.8 |
| 5/8 | Emails; PC with Dad; PC with Court | |

| 6/22 | Texts with Dad; Hearing; PC with Dad Attorney; PC to Laura Peterman | 1.5 |
|---|---|---|
| 6/28 | Hearing; PC to Counselors; PC with Dad | 2.5 |

(Sic passim.)  (Aug. 17, 2023 Hearing Tr., GAL Ex. 4.)

{¶ 25}  At the very least, issues concerning the GAL's practice of block-billing should have become apparent to the trial court in June 2023, when mother began challenging the GAL's fees and asking the court to scrutinize them.  For instance, in her June 7, 2023 motion to remove or replace the GAL, mother alleged, among other things, that the GAL "wouldn't explain his billing" and that "[i]nitially, he'd only provide an amount."  And, at the August 17, 2023 hearing on the GAL's contempt motion, mother testified about her concerns regarding the propriety of the GAL's fees.  (*See* Aug. 17, 2023 Hearing Tr. at 199-200, 206-07.)  In light of mother's concerns, the fact that many entries in the GAL's **limited** billing statement were block-billed complicates the process of determining the allocation of GAL fees under Juv. Loc.R. 27 and Sup.R. 48.02(H).  *See, e.g.*, *Ho v. Co*, 2023-Ohio-3698, ¶ 65 (1st Dist.) (Kinsley, J., concurring in part and dissenting in part).

{¶ 26}  We also take issue with the trial court's failure to assess the parties' ability to pay additional GAL fees, as required by Juv. Loc.R. 27(K) and Sup.R. 48.02(H).  Incorporated by reference in Juv. Loc.R. 27(K), Sup.R. 48.02(H) directed the trial court to assess whether circumstances impeded mother's ability to pay the GAL's fees **prior** to a court order requiring her to do so.  Among other things, Sup.R. 48.02(H)(3) directs courts to consider "[t]he income, assets, liabilities, and financial circumstances of the parties, as demonstrated using an affidavit, testimony to the court, or evidence of qualification for any means-tested public assistance" when "determining the allocation of guardian ad litem fees and expenses."

{¶ 27}  But the trial court made no such inquiry in this case.  Indeed, despite first finding mother to be indigent on November 23, 2020 and throughout the pendency of this case, there is no evidence that the trial court "consider[ed] those factors set forth in Sup. R. 48.02(H)(1) and (3), as well as [mother's] financial affidavit(s) or affidavit of indigency" when it ordered mother to pay 33 percent of the GAL fees in January 2021 and 50 percent of the GAL fees in September 2022. *See* Juv. Loc.R. 27(J). True, the court reduced mother's allocation to 40 percent on June 28, 2023.  But, this occurred **after** the GAL moved for

contempt against mother on account of her nonpayment of additional fees. At the August 2023 hearing on the contempt motion, mother presented some testimony about her limited financial means to pay the GAL's fees. (*See* Aug. 17, 2023 Hearing Tr. at 209-14.)

{¶ 28} However, nothing in the record before us suggests the trial court considered mother's ability to pay the outstanding fees when it entered the January 2021 and September 2022 orders allocating GAL fees to mother or when it granted the GAL's "contempt" motion (more appropriately construed as a motion for payment). Instead, and without being provided and reviewing *all* of the GAL's billing statements, the trial court found mother in contempt for nonpayment of additional fees incurred after the deposits into the GAL's trust account were exhausted without inquiring as to the financial burden of the additional fees on the parties. We believe this was plain error.

### B. The trial court is not permitted to impose a jail sentence for mother's nonpayment of the GAL's fees.

{¶ 29} Even assuming, *arguendo*, that the trial court's finding of contempt against mother for nonpayment of the GAL's fees was proper, the trial court had no authority to jail mother for her failure to pay these fees.

{¶ 30} To start, GAL fees are taxed as costs. The authority to levy GAL fees against a party in a private custody action is found in Juv.R. 4(G), which is titled "Costs" and provides that "[t]he court may fix compensation for the services of . . . guardians ad litem, tax the same as part of the *costs* and assess them against the child, the child's parents, custodian, or other person in loco parentis of such child." (Emphasis added.) Because GAL fees are denoted as court costs under Juv.R. 4(G), a party's obligation to pay such fees is a *civil* obligation. *See, e.g.*, *In re Bailey*, 2007-Ohio-4192, ¶ 14-17 (1st Dist.); *Ho*, 2023-Ohio-3698, at ¶ 55 (1st Dist.). *See also Padgett v. Padgett*, 2008-Ohio-6815, ¶ 36 (10th Dist.) ("A trial court has broad authority to tax guardian ad litem fees as costs, including the amount of the fees and the allocation to either or both of the parties.").

{¶ 31} Article I, Section 15 of the Ohio Constitution prohibits imprisonment for debt in civil actions. *See Disciplinary Counsel v. Hoover*, 2024-Ohio-4608, ¶ 7-8; *State v. Taylor*, 2020-Ohio-3514, ¶ 21. It is well-established that the duty to pay court costs is a *civil* obligation that arises from an implied contract with the court, and that the obligation to pay costs is therefore a debt that falls within the ambit of this constitutional protection.

Ohio Const., art. I, § 15 ("No person shall be imprisoned for debt in any civil action . . ."); *Strattman v. Studt*, 20 Ohio St.2d 95 (1969), paragraphs six and seven of the syllabus. Accordingly, a court cannot order a person be sent to jail for the nonpayment of court costs. *See, e.g.*, *Hoover* at ¶ 7-8; *Taylor* at ¶ 21. Unpaid court costs may be recouped **only** through the methods available for the collection of civil debts. *See, e.g.*, *Taylor* at ¶ 23-24.

{¶ 32} Here, the suspended jail sentence imposed for contempt due to nonpayment of GAL fees was improper and amounts to plain error. GAL fees may still be collected under procedures available for the collection of civil judgments. But those procedures were not implemented here.

### C. Disposition

{¶ 33} In conclusion, we sustain mother's first assignment of error and remand this matter to the trial court for further proceedings consistent with this decision, Juv. Loc.R. 27, Sup.R. 48.02, and the applicable law.

{¶ 34} As such, mother's second assignment of error—challenging the court's imposition of a jail sentence based on an alleged deprivation of counsel—is rendered moot. Thus, we need not address it.[2] *See, e.g.*, *Dunn v. Dunn*, 2025-Ohio-584, ¶ 19 (10th Dist.), citing *Croce v. Ohio State Univ. Bd. of Trustees.*, 2024-Ohio-2138, ¶ 67 (10th Dist.), citing *State v. Gideon*, 2020-Ohio-5635, ¶ 26 ("an assignment of error is moot when an appellant presents issues that are no longer live as a result of some other decision rendered by an appellate court"), and App.R. 12(A)(1)(c) (an appellate court must decide each assignment of error "[u]nless an assignment of error is made moot by ruling on another assignment of error").

### III. CONCLUSION

{¶ 35} Having sustained mother's first assignment of error, thus rendering her second assignment of error moot, we reverse the trial court's judgment in part and affirm in part, and remand this cause with instructions to the trial court to vacate the contempt order. We otherwise affirm the judgment in all other respects.

---

[2] Notwithstanding mootness, here, we take this opportunity to express our concern/alarm that the trial court went ahead with proceedings that she believed could—and ultimately did—result in a suspended jail sentence. Had this been a contempt charge that could properly have resulted in a jail sentence, surely mother would have been entitled to counsel throughout the contempt proceedings. *See, e.g.*, *Segovia v. Likens*, 2008-Ohio-5896, ¶ 37 (10th Dist.); *Andrews v. Andrews*, 2022-Ohio-3854, ¶ 18-19 (6th Dist.).

*Judgment reversed in part and affirmed in part;*
*cause remanded with instructions.*

MENTEL and BOGGS, JJ., concur.

————————